**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kenneth S. ALEXANDER, Defendant–Appellant.**

No. 96–4188.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1997.

Decided Jan. 30, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied March 9, 1998.

Cheryl Bell (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Scott J. Frankel (argued), Frankel & Cohen, Chicago, IL, for Defendant–Appellant.

Before CUMMINGS, RIPPLE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Kenneth Alexander was convicted by a jury on eleven counts of bankruptcy fraud and two counts of mail fraud, and the district court sentenced him to a prison term of 32 months. Four of the bankruptcy counts were brought under 18 U.S.C. § 157 and involved various frauds committed by Alexander in connection with a bankruptcy petition filing business that he operated. The

remaining seven counts of bankruptcy fraud were brought pursuant to 18 U.S.C. § 152, and those counts addressed three personal bankruptcy petitions filed by Alexander between September 1994 and June 1995. The first mail fraud count, moreover, charged Alexander with making a false insurance claim relating to his bankruptcy petition filing business, and the second mail fraud count charged him with making false representations on a mortgage application. Alexander advances three arguments in challenging those convictions here. First, he contends that the thirteen counts were improperly joined under Fed.R.Crim.P. 8(a). Alternatively, he asserts that the district court erred in denying his motion for a severance pursuant to Fed.R.Crim.P. 14. Finally, he contends that the government's evidence on the false insurance claim was insufficient to establish a violation of the mail fraud statute. We reject each of these arguments below and thus affirm Alexander's convictions.

## I.

The first four counts of the government's superseding indictment were addressed to Alexander's bankruptcy petition filing business. That business was known as "DuPage Paralegal Services" and was operated out of Alexander's home in Addison, Illinois. In return for a designated fee, Alexander would offer to initiate a bankruptcy proceeding on a client's behalf and then to monitor that proceeding for the client as it progressed. And because such services generally require some legal expertise, Alexander would induce prospective clients to utilize his service by representing that he was an attorney or a law school graduate. He also would inform prospective clients that he had an office staffed with attorneys who would monitor the petitions and appear in court whenever necessary. The government alleged in the indictment and established at trial that those representations were false. Alexander was not an attorney, he had never attended law school, and he had no attorneys working for his business.

The government also asserted that Alexander gave false advice to his clients about the effect of filing a bankruptcy petition under Chapter 13 of the Bankruptcy Code. Alexander apparently advised clients that such petitions would eliminate their debts without requiring that they make any payments to existing creditors. That advice was erroneous, however, because under Chapter 13, the debtor is required to submit a plan to repay creditors within fifteen days of the date of the filing. The debtor's debts are not discharged until the payments called for by the approved plan have been made. And because Alexander failed to submit the required repayment plans after filing Chapter 13 petitions for his clients, their bankruptcy petitions were routinely dismissed after the fifteen-day period had passed. By that point, however, Alexander would no longer be accepting his clients' telephone calls.

At the same time that he was defrauding his clients, Alexander also was defrauding the bankruptcy court itself. The government maintained that the bankruptcy petitions and other documents he filed with the bankruptcy court were replete with false statements. For example, Alexander would state on the bankruptcy petitions he filed for paying clients that the petitions were being filed pro se. He also would represent on the debtor's statement of financial affairs that the debtor had not paid anyone to assist him in filing the petition.

The remaining seven counts of bankruptcy fraud addressed a series of three bankruptcy petitions Alexander filed on his own behalf between September 1994 and June 1995. Each of those petitions was ultimately dismissed, but during the time that each was pending, Alexander received the benefit of the automatic stay, which prevented his mortgage company and other creditors from foreclosing on his property. The government alleged that Alexander's personal bankruptcy petitions also included a series of false representations designed to conceal the existence of the debtor's bankruptcy petition filing business. For instance, Alexander's petitions failed to reveal the existence of DuPage Paralegal Services, and the later petitions also failed to reveal the existence of the earlier, dismissed petitions.

The first mail fraud count, meanwhile, involved an allegedly fraudulent insurance claim for business losses that Alexander submitted to the State Farm Insurance Company. Alexander's claim stemmed from an automobile accident in which he had been involved in December 1994. In notifying State Farm of the accident, Alexander indicated that his laptop computer had fallen from the passenger seat and been damaged, causing him to lose a number of documents needed for his clients' bankruptcy cases. Alexander ultimately claimed that documents relating to sixty-six cases had been lost and that their value was $11,900. In processing Alexander's claim, State Farm asked a third party (S.B. Baker and Associates) to obtain a copy of the automobile accident report, and after doing so, S.B. Baker mailed the report to State Farm. The insurance company initially paid for the cost of repairing Alexander's laptop computer but requested additional documentation on the lost documents claim. In response to that request, Alexander submitted contracts for the word processing services that allegedly were required to enable him to recreate the lost documents. It turned out that those contracts had been forged, however, and that no word processing services had been performed. State Farm eventually paid over $2,000 on the lost documents claim, bringing the total payout on the computer and lost documents to the policy limit of $5,000.

The second and final mail fraud offense involved a mortgage loan application submitted by Alexander in July 1993 in connection with the purchase of his three-flat residence in Addison, Illinois. It is out of that residence that Alexander conducted his bankruptcy petition filing business. On his mortgage application, Alexander falsely represented that he had $98,000 in an investment account with Charles Schwab, and he submitted a receipt to the mortgage company which indicated that a deposit of 16,000 shares of stock had been made to the Schwab account. Alexander also represented on the mortgage application that he had filed tax returns for the preceding two years and that he had paid his taxes in full. He even created the allegedly-filed tax returns

and submitted them to the mortgage company along with a fabricated letter from the IRS confirming that his taxes had been paid in full. The government proved at trial, however, that neither Alexander nor his business had filed tax returns in the relevant years and that the IRS had never sent Alexander any confirmatory letter. Relying on the accuracy of the materials submitted to it, the mortgage company approved a $168,000 loan for the purchase of Alexander's Addison residence.

## II.

### A.

We first consider Alexander's contention that the government's evidence on count V was insufficient to establish mail fraud. Specifically, Alexander asserts that the government failed to prove that the alleged mailing occurred or, alternatively, that the mailing was reasonably foreseeable and in furtherance of the alleged scheme to defraud. Alexander bears a heavy burden in challenging the sufficiency of the evidence, as we review the record in the light most favorable to the government and will sustain the conviction so long as any reasonable trier of fact could have concluded that the essential elements of mail fraud were shown. *See Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979); *United States v. Morris*, 80 F.3d 1151, 1160 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996).

In order to establish a violation of the mail fraud statute, the government was required to prove that Alexander engaged in a scheme to defraud and that the mails were used for the purpose of executing or attempting to execute that scheme. *See Schmuck v. United States*, 489 U.S. 705, 721, 109 S.Ct. 1443, 1453, 103 L.Ed.2d 734 (1989); *United States v. Ross*, 77 F.3d 1525, 1542 (7th Cir. 1996). It is not necessary that Alexander himself utilized the mails. It is instead sufficient if he caused the mails to be used, which he would do by acting " 'with the knowledge that the use of the mails will follow in the ordinary course of business, or where such

use can reasonably be foreseen.'" *United States v. Walters*, 997 F.2d 1219, 1223 (7th Cir.1993) (quoting *United States v. Kuzniar*, 881 F.2d 466, 472 (7th Cir.1989)); *see also United States v. Koen*, 982 F.2d 1101, 1107 (7th Cir.1992).

The mailing on which the government relies here was not made by Alexander, but by a third party (S.B. Baker & Associates), who at State Farm's request, obtained and mailed to the insurance company a copy of the police report addressed to the automobile accident in which Alexander's laptop computer had been damaged. Alexander insists that the government produced no evidence to establish that S.B. Baker actually mailed the police report to State Farm, but the representative of S.B. Baker who testified at Alexander's trial stated that such reports are always either faxed or mailed to the requesting client, and that if S.B. Baker first faxes a report to its client, it always follows up by mailing a hard copy.[1] There also was nothing in the trial testimony to indicate that S.B. Baker may have deviated from that standard practice in its handling of the police report at issue here. Under our cases, such evidence of a standard office or business practice is sufficient circumstantial proof to take the mailing issue to the jury. *See United States v. McClellan*, 868 F.2d 210, 216 (7th Cir.1989); *United States v. Keplinger*, 776 F.2d 678, 690–91 (7th Cir. 1985), *cert. denied*, 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986); *cf. United States v. Swinson*, 993 F.2d 1299, 1301–02 (7th Cir.1993) (finding government's proof of a mailing insufficient where evidence showed that regular office practice had been interrupted before mailing would have occurred). The jury in this case reasonably concluded from the evidence of S.B. Baker's standard business practice that the police report had been mailed to State Farm.

■ We similarly find that a reasonable jury could conclude that the mailing of the police report was foreseeable in these circumstances. Alexander could not reasonably have expected State Farm to satisfy his property damage claim without first obtaining a copy of the police report addressed to the automobile accident in which the damage had allegedly occurred. It was reasonably foreseeable that a mailing would be made in connection with that police report. We have no doubt, moreover, that the mailing here was in furtherance of Alexander's scheme to defraud, as it was a necessary part of the process pursuant to which Alexander would receive payment on his claim. *See Koen*, 982 F.2d at 1109–10. For these reasons, we find the evidence sufficient to support Alexander's conviction on count V.

## B.

■ Alexander next contends that the thirteen counts in the government's superseding indictment were improperly joined under Fed.R.Crim.P. 8(a). Alexander never advanced such an argument to the district court, however, as he filed only a motion for severance pursuant to Fed.R.Crim.P. 14. At the hearing on that motion, moreover, Alexander's counsel all but conceded that he was not suggesting that the various counts were misjoined. (*See* Apr. 1, 1996 Tr. at 3–5.) We therefore review the joinder issue for plain error. *United States v. Woody*, 55 F.3d 1257, 1267 (7th Cir.), *cert. denied*, 516 U.S. 889, 116 S.Ct. 234, 133 L.Ed.2d 163 (1995); *United States v. Balzano*, 916 F.2d 1273, 1280 (7th Cir.1990).

■ Rule 8(a) provides as follows:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Fed.R.Crim.P. 8(a). In assessing the propriety of joinder under this rule, we look solely to the face of the government's indictment and not to any evidence ultimately presented at the defendant's trial. *E.g., United States v. Hubbard*, 61 F.3d 1261, 1270 (7th

---

1. The S.B. Baker representative testified that the company never utilizes Federal Express or any type of delivery service to deliver police reports to its clients.

Cir.1995), *cert. denied,* 516 U.S. 1175, 116 S.Ct. 1268, 134 L.Ed.2d 216 (1996); *United States v. Coleman,* 22 F.3d 126, 134 (7th Cir.1994). Our cases make plain that there is a strong policy preference in favor of the joinder of qualifying charges and that the rule must be broadly construed toward that end. *See Woody,* 55 F.3d at 1267; *Coleman,* 22 F.3d at 134; *United States v. Archer,* 843 F.2d 1019, 1021 (7th Cir.), *cert. denied,* 488 U.S. 837, 109 S.Ct. 100, 102 L.Ed.2d 76 (1988). Alexander contends, however, that none of the Rule 8(a) joinder requirements were satisfied in this case because the only link between the various charges was that each involved some form of false statement. Such a general link, Alexander contends, is insufficient to support joinder under Rule 8(a).

▮▮▮▮ The government responds that joinder was proper here because Alexander's various crimes were "of the same or similar character." That is the broadest of the possible bases for joinder under Rule 8(a). In *Coleman,* we observed that the "same or similar character" requirement "is a rather clear directive to compare the offenses charged for categorical, not evidentiary, similarities." 22 F.3d at 133. Counts may be joined pursuant to this prong of the rule if the offenses "are of like class," even if they are not temporally or evidentially related. *Id.; see also United States v. Turner,* 93 F.3d 276, 283 (7th Cir.) ("Rule 8(a) requires nothing more than the similarity of the offenses to be joined."), *cert. denied,* —— U.S. ——, 117 S.Ct. 596, 136 L.Ed.2d 524 (1996); *United States v. Walls,* 80 F.3d 238, 243 (7th Cir.1996). And the "same or similar character" standard may be satisfied even if the offenses are not of identical statutory origin. *See Coleman,* 22 F.3d at 133 n. 10; *see also Turner,* 93 F.3d at 283–84 (two charges are of the same or similar character when they allege violations of "closely-related statutory prohibitions" and involve the same controlled substance); *Koen,* 982 F.2d at 1111–12 (finding embezzlement, mail fraud, and arson charges to be of the same or similar character).

The government explains that although the thirteen counts in the present indictment are derived from three distinct criminal statutes, the various charges are of the "same or similar character" because each of Alexander's offenses involved a materially false representation made with the intent to deceive a specified victim. According to the government, moreover, Alexander committed each of his thirteen offenses in order to enhance the resources of his bankruptcy petition filing business. The fraud on the mortgage application was committed, for example, in order to obtain the residence out of which Alexander would operate that business. The bankruptcy fraud charges under 18 U.S.C. § 157 resulted from the operation of the business itself, and Alexander's personal bankruptcy petitions were designed to keep the business afloat by preventing the mortgage company from foreclosing on the property where the business was operated. The mail fraud charge relating to the insurance claim, finally, represented an attempt by Alexander to obtain additional money for his business by fraudulent means. In looking solely to the face of the superseding indictment, then, we must agree with the government that the offenses charged there are of the "same or similar character" for purposes of the rule. *See United States v. Levine,* 983 F.2d 165, 167 (10th Cir.1992) (mail fraud and bank fraud charges properly joined where both types of charges involved submission of falsified documents and arose out of the operation of the defendant's business); *Koen,* 982 F.2d at 1111–12 (embezzlement, mail fraud, and arson charges all grew out of the defendant's mishandling of the funds of the organization he founded); *United States v. Kaplan,* 895 F.2d 618, 621 (9th Cir.1990) (mail fraud counts addressed to false insurance claims submitted by physician were properly joined with counts alleging that physician had prescribed controlled substances for other than legitimate medical purposes). There was thus no error in the government's decision to join the thirteen counts in a single indictment.

### C.

▮▮▮▮ The alternative argument Alexander unsuccessfully advanced to the district court was that the four groups of charges

(*i.e.*, the two groups of bankruptcy charges and the two distinct mail fraud counts) should have been severed for separate trials pursuant to Rule 14. That rule authorizes a district judge to sever charges for separate trials "[i]f it appears that a defendant or the government is prejudiced by a joinder of [the] offenses" for a single trial. Fed. R.Crim.P. 14. We have observed that where joinder is based upon the "similar character" of the indictment's charges, the risk of potential prejudice to the defendant from a joint trial is enhanced, and the district court must therefore be especially vigilant in monitoring the proceedings for developing unfairness. *Turner*, 93 F.3d at 284; *Coleman*, 22 F.3d at 134. The decision on whether to grant or deny a severance, however, is left to the sound discretion of the trial judge, and we review that court's conclusion only for an abuse of that discretion. *United States v. Vest*, 116 F.3d 1179, 1189–90 (7th Cir.1997); *Turner*, 93 F.3d at 284; *Koen*, 982 F.2d at 1112. Such an abuse of discretion will be found only where the defendant is able to show that the denial of a severance caused him actual prejudice in that it prevented him from receiving a fair trial; it is not enough that separate trials may have provided him with a better opportunity for an acquittal. *Vest*, 116 F.3d at 1190; *United States v. Moya–Gomez*, 860 F.2d 706, 754 (7th Cir. 1988), *cert. denied*, 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989).

Alexander first contends that he was prejudiced by the joint trial because he wished to testify in his own defense on count VI (the mail fraud count addressed to the mortgage loan application) but to remain silent with respect to the other charges. He contends that because he was charged in count VI with significantly overstating his assets on the mortgage loan application, any testimony he would give on that count would have compromised his defense of counts VII through XIII, where he was charged with understating the value of his assets in connection with his personal bankruptcies. He therefore contends that the joint trial deprived him of any opportunity to testify as to count VI alone.

■ We have made clear that severance is not required " 'every time a defendant wishes to testify to one charge but to remain silent on another. If that were the law, a court would be divested of all control over the matter of severance and the choice would be entrusted to the defendant.' " *United States v. Archer*, 843 F.2d 1019, 1022 (7th Cir.) (quoting *United States v. Peters*, 791 F.2d 1270, 1287 (7th Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986)), *cert. denied*, 488 U.S. 837, 109 S.Ct. 100, 102 L.Ed.2d 76 (1988). We have recognized, however, that there may be cases in which a defendant can convincingly show that he has important testimony to give on one count but a strong need to remain silent on another, and in that circumstance, we have indicated that severance may be required. *See Archer*, 843 F.2d at 1022; *see also United States v. Balzano*, 916 F.2d 1273, 1283 (7th Cir.1990). Yet general assertions to that effect are insufficient to establish prejudice; we have required specific examples of the exculpatory testimony that the defendant would give. *Balzano*, 916 F.2d at 1283. Alexander has provided no specifics here. He has not told us, for example, how he would explain the fraudulent representations made on the mortgage application about either the Charles Schwab account or about the tax returns he allegedly filed in the preceding years. Nor has he indicated what he would say about the falsified Schwab receipt and tax returns or the forged letter from the IRS. Alexander has instead only generally asserted that any testimony supporting his representations on the mortgage loan application would harm his defense on the personal bankruptcy fraud charges. That sort of general statement does not meet the standard we have set for a severance on this ground—that the defendant make " 'a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other.' " *Archer*, 843 F.2d at 1022 (quoting *Baker v. United States*, 401 F.2d 958, 977 (D.C.Cir.), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970)); *see also Balzano*, 916 F.2d at 1283–84.

There is yet a further reason why this aspect of Alexander's argument must fail,

however. Even in a separate trial of count VI, Alexander would be subject to cross-examination on the fraudulent representations charged in the other counts because those instances of dishonesty are relevant to Alexander's "character for truthfulness or untruthfulness" under Fed.R.Evid. 608(b). He would therefore gain little by testifying in a separate trial of count VI.

 Alexander also makes general arguments relating to the potential spillover effect of the evidence on the various counts. He suggests that the government's case on certain of the charges was relatively weak and that the government therefore benefitted by trying all of the charges together. The government notes, however, that the district court instructed the jury to consider each charge, and the evidence relating to it, separately. We have consistently held that such an instruction provides " 'an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence.' " *Turner*, 93 F.3d at 284 (quoting *United States v. Pulido*, 69 F.3d 192, 209 (7th Cir.1995)); *see also Koen*, 982 F.2d at 1113; *Moya–Gomez*, 860 F.2d at 768. We also would observe that the evidence as to each count was relatively straightforward and that the trial of all thirteen counts lasted less than four days. The evidence therefore was quite manageable, leaving little likelihood that the jury would have been confused in compartmentalizing it. *See United States v. Jamal*, 87 F.3d 913, 914–15 (7th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 406, 136 L.Ed.2d 320 (1996); *Coleman*, 22 F.3d at 135. Finally, we cannot accept Alexander's assertion that the risk of prejudicial spillover was great because the government's case on certain of the counts was relatively "weak." Our own review of the record evidence reveals that the government presented a forceful case on each of the thirteen charges, and virtually the only defense Alexander mounted was to attempt to undermine the credibility of the government's witnesses. There undoubtedly was ample evidence to convict Alexander on each of the charges without resort to any of the alleged spillover evidence. For these reasons, we do not believe that Alexander has shown actual prejudice from the denial of a severance in this case. We thus find no abuse of discretion in the district court's decision to conduct a joint trial.

AFFIRMED.