Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 22, 2019

**2019 CO 26**

**No. 15SC1096, *Bondsteel v. People*—Renewal of Motions—Preservation of Objections— Joinder—Cross-Admissibility of Evidence.**

In this case, the supreme court considers whether a criminal defendant's failure to renew at trial a pretrial objection to the prosecution's motion to join two separately filed cases waives the defendant's ability to challenge such joinder on appeal and, if not, whether the cases were properly joined here.

The court concludes that, to the extent *People v. Barker*, 501 P.2d 1041 (Colo. 1972), and *People v. Aalbu*, 696 P.2d 796 (Colo. 1985), required a defendant to renew at trial a pretrial objection to joinder or motion to sever, those cases are no longer good law because the renewal obligation that they espoused is inconsistent with the current rules of criminal procedure.  The court thus further concludes that the defendant properly preserved his objection to the joinder of the two cases filed against him.

Turning then to the merits, the court concludes that the trial court properly exercised its discretion in joining the cases at issue because the record supports the court's findings that the joinder of the two cases satisfied the requirements of Crim. P. 8(a)(2) and Crim. P. 13 and the joinder did not prejudice the defendant.

Accordingly, the court affirms the judgment of the division below.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 26

### Supreme Court Case No. 15SC1096
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 11CA1784

#### Petitioner:

James Jud Bondsteel,

v.

#### Respondent:

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
April 22, 2019

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Andrew C. Heher, Deputy Public Defender
*Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
William G. Kozeliski, Assistant Attorney General
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1     This case requires us to decide whether a criminal defendant's failure to renew at trial a pretrial objection to the prosecution's motion to join two separately filed cases waives the defendant's ability to challenge such joinder on appeal and, if not, whether the cases were properly joined here.[1]

¶2     We conclude that, to the extent *People v. Barker*, 501 P.2d 1041 (Colo. 1972), and *People v. Aalbu*, 696 P.2d 796 (Colo. 1985), required a defendant to renew at trial a pretrial objection to joinder or motion to sever, those cases are no longer good law because the renewal obligation that they espoused is inconsistent with the current rules of criminal procedure.  We thus further conclude that defendant James Jud Bondsteel properly preserved his objection to the joinder of the two cases filed against him.

¶3     Turning then to the merits, we conclude that the trial court properly exercised its discretion in joining the cases at issue because the record supports the court's findings that the joinder of the two cases satisfied the requirements of Crim. P. 8(a)(2) and Crim. P. 13 and the joinder did not prejudice Bondsteel.

¶4     We therefore affirm the judgment of the division below.

## I.  Facts and Procedural History

¶5     As noted above, this case involves the joinder of two separately filed cases.

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether a defendant's failure to renew an objection at trial to the prosecution's pretrial motion to join two separately filed cases waives the defendant's ability to challenge joinder on appeal.

2. Whether the trial court abused its discretion in joining the Motorcycle Case with the Signal Mountain Trail Case for trial.

¶6    The first case, "the Motorcycle Case," involved three incidents in which a male motorcyclist wearing a leather jacket and a motorcycle helmet that largely concealed his face approached women who were driving or parked in their cars. In each incident, the assailant showed a gun, directed the victims to move or remove parts of their clothing and expose themselves to him, and demanded that the victims give him some of their belongings. At the time of these incidents, none of the victims identified Bondsteel as the assailant.

¶7    In the second case, "the Signal Mountain Trail Case," a man on foot attacked two women on a hiking trail. The man was dressed in full camouflage and a long parka, and his face was covered by a balaclava. He accosted the women, threatening them with a knife and cutting the hand and arm of one of them. In the course of this attack, the assailant had one of the women on the ground with his knife to her throat, and she asked why he was doing this. He responded, "Because it's fun," and then lifted the woman's shirt and opened her shorts and looked down them. The women managed to escape after hitting the man in the head with a walking stick and rocks, and, in separate line-ups conducted later, they both identified Bondsteel as their attacker. In addition, the DNA profile of a sample recovered from one of the women's backpacks matched a sample taken from Bondsteel.

¶8    Based on the foregoing, the People charged Bondsteel in the Signal Mountain Trail Case with multiple offenses, including second-degree kidnapping, attempted sexual assault, assault, and menacing.

3

¶9     Several months later, Bondsteel's then-wife (T.B.) informed the police that she had seen Bondsteel with suspicious items, including a white clutch purse that she had never seen before. She further stated that Bondsteel had informed her that (1) "he had robbed a couple of girls for fun" and (2) he had used a gun to make the women expose themselves to him. T.B. also told the police that Bondsteel had shown her a press release concerning the Motorcycle Case and said, "This is me they're talking about." He explained that he would pull out a handgun and tell the victims to give him their purses. He would then threaten them and ask them to flash him either by lifting their shirts or hiking up their skirts. T.B. then said that Bondsteel had told her that he had to get rid of his motorcycle because the police would be looking for it and that he traded it for a street bike, a fact that the police were later able to confirm. Finally, when T.B. heard that the assailant in the Signal Mountain Trail Case had said that he had committed the assault "because it was fun," T.B. stated that this was a "tag line" of Bondsteel's. According to T.B., "He only does it if it's fun. It's not worth doing if it's not fun. That's just James."

¶10    Consistent with the foregoing, T.B. subsequently provided to the police letters that Bondsteel had written her in which he apologized for his involvement in the crimes at issue and asked for her help in establishing an alibi for the Signal Mountain Trail Case.

¶11    Based on this and other evidence that the police had gathered, Bondsteel was charged in the Motorcycle Case with, among other things, sexual assault, aggravated robbery, and unlawful sexual contact.

¶12    The matters proceeded toward trial, and, in pretrial proceedings in the Signal Mountain Trail Case, the People moved pursuant to CRE 404(b) to introduce evidence of

4

the three alleged incidents for which Bondsteel was charged in the Motorcycle Case. The People contended that such evidence was admissible to prove Bondsteel's motive, intent, and modus operandi in committing the assaults at issue in the Signal Mountain Trail Case. The court granted the People's motion, and the People then orally moved to consolidate the two cases for trial. Over Bondsteel's objection, the court granted that motion from the bench.

¶13 At a subsequent pretrial hearing, the court and counsel further discussed Bondsteel's objection to the joinder of the two cases. Renewing his objection, Bondsteel argued that, even if evidence from the Motorcycle Case would be admissible in the Signal Mountain Trail Case, the People had presented no specific evidentiary hypothesis for how evidence from the Signal Mountain Trail Case would be admissible in the Motorcycle Case. Bondsteel contended to the contrary that evidence from the Signal Mountain Trail Case would not, in fact, be admissible in the Motorcycle Case. Specifically, he asserted that not only were the incidents dissimilar, but also the Signal Mountain Trail evidence would not show motive or intent and would serve no purpose other than to paint Bondsteel as a person of bad character. Bondsteel further argued that joinder would provide the prosecution with identification evidence that was otherwise lacking in the Motorcycle Case (because jurors would simply assume identification in that case based on the arguably stronger identification evidence in the Signal Mountain Trail Case). And Bondsteel contended that joinder would prevent him from presenting different defenses in each case, namely, a motive defense in the Signal Mountain Trail

5

Case and an identity defense in the Motorcycle Case. For all of these reasons, Bondsteel contended that joinder would be prejudicial.

¶14 The People responded that evidence from the Signal Mountain Trail Case would be admissible in the Motorcycle Case pursuant to CRE 404(b) to show common plan, scheme, identification, and motive because the incidents had substantial similarities. The People further noted that joinder was proper because the investigations of the respective cases were intertwined and could not readily be separated.

¶15 The trial court ultimately agreed with the People and confirmed its decision to consolidate the cases for trial. In support of this ruling, the court noted that it perceived a great deal of similarity among the incidents underlying the two cases. For example, all of the incidents occurred within a relatively short time span, and each involved an attack on one or two women in an "open air" but isolated place in which the assailant displayed or used a weapon. The court further observed that, in light of the evidence, the jury could properly determine that the pattern of conduct reflected in the Motorcycle Case carried over into the Signal Mountain Trail Case. And the court perceived no antagonistic defenses in the two cases.

¶16 The consolidated case proceeded to trial, and, at trial, Bondsteel did not renew his pretrial objections to the joinder of the two cases. A jury ultimately convicted Bondsteel on eighteen of the twenty-three counts, including most but not all of the counts charged in the Signal Mountain Trail Case and many but not all of the counts charged in the Motorcycle Case. In addition, one conviction in the Signal Mountain Trail Case was for a lesser-included offense.

6

¶17    Bondsteel then appealed, arguing, as pertinent here, that the trial court had committed reversible error when it joined the two cases.  In a unanimous, published opinion, a court of appeals division affirmed the trial court in all respects except as to one conviction in the Signal Mountain Trail Case, which the division reversed based on insufficiency of the evidence.  *People v. Bondsteel*, 2015 COA 165, ¶ 1, __ P.3d __.  The division determined, pursuant to *Aalbu*, that because Bondsteel did not renew at trial his objection to the People's pretrial joinder motion, his objection to the joinder of the cases was, at best, unpreserved.  *Id*. at ¶ 27.  Because, however, case law decided after *Barker* and *Aalbu* had allowed for plain error review in cases of forfeiture (as distinct from waiver), and because some case law decided since *Barker* and *Aalbu* had indicated that a defendant is not required to renew an objection to consolidation, the division chose to review Bondsteel's misjoinder argument on the merits, ultimately concluding that the trial court had not reversibly erred in joining the cases for trial.  *Id*. at ¶¶ 29–31, 56.

¶18    Bondsteel then petitioned this court for certiorari review, and we granted his petition.

## II.  Analysis

¶19    We begin by addressing whether Bondsteel's failure to renew at trial his pretrial objection to the joinder of the Motorcycle Case and the Signal Mountain Trail Case waived his ability to challenge on appeal the joinder of those cases.  After concluding that Bondsteel was not required to renew his pretrial objection and that he had therefore preserved that objection, we proceed to the merits and conclude that, on the facts of this case, the trial court did not reversibly err in joining the cases.

7

## A. Preservation of Objection to Joinder

¶20     Bondsteel first contends that he did not waive his right to appeal the trial court's joinder determination when he did not renew at trial his pretrial objection to such joinder. We agree.

¶21     We review de novo the legal question of whether a defendant waives an objection to joinder of two cases by not renewing at trial a pretrial objection to such joinder. *See People v. Bergerud*, 223 P.3d 686, 693 (Colo. 2010) (noting that the effective waiver of counsel presents a mixed question of fact and law that an appellate court reviews de novo); *People v. Blehm*, 983 P.2d 779, 792 n.9 (Colo. 1999) (noting with respect to a defendant's waiver of the right to testify at trial that the trial court's factual findings are reviewed for clear error whereas its ultimate conclusion regarding the validity of the waiver is a question of law that is reviewed de novo).

¶22     In *Barker* and *Aalbu*, this court determined that a defendant's "failure to renew [a] motion for severance at the close of all the evidence constitutes a waiver of the objection." *Barker*, 501 P.2d at 1043; *accord Aalbu*, 696 P.2d at 806. In the present case, the division perceived no substantive difference between a motion for severance, which was at issue in *Barker* and *Aalbu*, and an objection to joinder, which is at issue here, and therefore concluded that Bondsteel was required to renew at trial his pretrial objection to joinder. *Bondsteel*, ¶¶ 16–27.

¶23     We agree with the division that a pretrial motion to sever joined cases is substantively the same as an objection to joinder. We disagree, however, that a defendant

8

must renew either a motion to sever or an objection to joinder in order to preserve the issue for appeal.

¶24    In *Barker*, 501 P.2d at 1043, this court considered whether a defendant's failure to renew a pretrial motion for severance at the close of all of the evidence waived his right to challenge the joinder on appeal.  Relying on the ABA's Standards for Criminal Justice Relating to Joinder and Severance, we concluded that it did.  *Id.*  At the time that *Barker* was decided, those standards provided, "If a defendant's pretrial motion for severance was overruled, he may renew the motion on the same grounds before or at the close of all the evidence.  Severance is waived by failure to renew the motion."  ABA Standards for Crim. Justice Relating to Joinder & Severance 2.1(b) (1968).

¶25    In *Aalbu*, 696 P.2d at 806, this court, without substantive discussion, followed the *Barker* rule for preservation of a pretrial motion to sever.  Such a ruling was consistent with the then-existing version of Crim. P. 33(a), which provided, "The party claiming error in the trial of any case must move the trial court for a new trial . . . .  Only questions presented in such motion will be considered by the appellate court on review."

¶26    In 1985, after *Aalbu* was decided, this court adopted amendments to Crim. P. 33(a) that eliminated the requirement that a party move for a new trial to preserve a question for appellate review.  Specifically, the current version of Crim. P. 33(a) provides, "The party claiming error in the trial of any case may move the trial court for a new trial or other relief.  The party, however, need not raise all the issues it intends to raise on appeal in such motion to preserve them for appellate review."

9

¶27    Similarly, under Crim. P. 51, parties are not required to seek an exception from trial court rulings in order to preserve them for appeal. That Rule provides:

> For all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the court ruling or order is made or sought, makes known to the court the action which he desires the court to take or his objection to the court's action and the grounds therefor.

¶28    In our view, the current Rules of Criminal Procedure render obsolete the historical requirement that, in order to preserve a claim, a defendant had to renew an objection, either by filing a motion for a new trial or requesting an exception. Moreover, we deem the renewal-of-objection requirement set forth in *Barker* and *Aalbu* to be similar in nature to such obsolete prerequisites to preservation, and we are not persuaded otherwise by the arguments that a defendant must give the trial court an opportunity to reconsider its prior ruling and that, absent such a requirement, defendants will withhold renewed objections as a matter of trial strategy. If the facts and circumstances that motivated the initial objection have not changed, then all of the requirements for preservation of the issue will have been satisfied. If, conversely, facts and circumstances have changed by the time of trial such that a defendant will have had new arguments in opposition to consolidation, then a defendant's failure to raise such new arguments would risk a finding on appeal that those arguments were unpreserved. Either way, existing precedent for preservation suffices to guide an appellate court's consideration, and we perceive no basis to enforce a unique rule in the context of joinder and severance. Nor do we perceive any reasonable basis to assume that, absent a renewal requirement, a defendant would choose to withhold a meritorious objection in order to preserve a future

10

appellate argument. The assumption that any competent attorney would withhold a meritorious argument at trial in the hope of having something to argue on appeal if the trial goes badly belies reality.

¶29 For these reasons, we now overrule *Barker* and *Aalbu* and conclude that a party need not renew a pretrial motion for severance or a pretrial objection to joinder in order to preserve his or her opposition to an order joining cases for trial. Accordingly, we further conclude that Bondsteel's pretrial objection to joinder was sufficient to preserve the issue for appeal, and we need not address the People's contention (and the conclusion of the division below) that *People v. Gross*, 39 P.3d 1279, 1281–82 (Colo. App. 2001), which concluded that a party need not renew a pretrial objection to joinder, was wrongly decided.

¶30 The question thus becomes whether the trial court reversibly erred in joining the cases at issue. We proceed to address that question.

## B. Merits

¶31 In his briefs in this court, Bondsteel makes numerous and lengthy arguments as to why the trial court reversibly erred in joining the cases at issue. We discern his contentions to boil down to three principal objections to joinder here: (1) the cases were not of a "same or similar character" within the meaning of Crim. P. 8(a)(2); (2) because the cases were not sufficiently similar, the evidence in each case would not have been admissible under CRE 404(b) in a separate trial of the other case; and (3) because the facts and circumstances underlying the respective cases were dramatically *dis*similar, he was prejudiced by the joinder. We begin by addressing the proper framework for considering

11

the propriety of joinder of separate cases. We then address each of Bondsteel's contentions, in turn.

## 1. Standard of Review and Requirements for Consolidation

¶32 We review a trial court's decision to consolidate separate charges under Crim. P. 13 for an abuse of discretion. *Brown v. Dist. Court*, 591 P.2d 99, 101 (Colo. 1979); *People v. George*, 2017 COA 75, ¶ 78, __ P.3d __.

¶33 Crim. P. 13 provides, in pertinent part:

> Subject to the provisions of Rule 14, the court may order two or more indictments, informations, complaints, or summons and complaints to be tried together if the offenses, and the defendants, if there are more than one, could have been joined in a single indictment, information, complaint, or summons and complaint.

¶34 Accordingly, consolidation requires both that joinder would have been proper under Crim. P. 8(a)(2) and that the consolidation would not result in prejudice within the meaning of Crim. P. 14.

¶35 Here, Bondsteel contends that neither of these conditions for consolidation was satisfied. We proceed to address these contentions.

## 2. "Same or Similar Character" Under Crim. P. 8(a)(2)

¶36 Crim. P. 8(a)(2) allows for the joinder of two or more offenses in a single charging document if they are "of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Bondsteel argues that the trial court reversibly erred in joining the cases at issue because they were not "of the same or similar character" within the meaning of Crim. P. 8(a)(2). We are not persuaded.

12

¶37     Although this court has not had the opportunity to elaborate on the meaning of "same or similar character" as that phrase is used in Crim. P. 8(a)(2), federal courts applying the federal analogue to the Colorado rule have made clear that such a requirement does not impose onerous restrictions on joinder. *See, e.g.*, *United States v. Jawara*, 474 F.3d 565, 573 (9th Cir. 2007) ("Because Rule 14 is available 'as a remedy for prejudice that may develop during the trial,' Rule 8 has been 'broadly construed in favor of initial joinder.'") (quoting *United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir. 1971)); *United States v. Alexander*, 135 F.3d 470, 476 (7th Cir. 1998) (noting that the "same or similar character" prong represents "the broadest of the possible bases for joinder" under Fed. R. Crim. P. 8(a)(2)).

¶38     In assessing whether two cases are of a "same or similar character," courts have considered factors such as the elements of the offenses at issue, the temporal proximity of the underlying acts, the likelihood that the evidence will overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims. *See, e.g., Jawara*, 474 F.3d at 578; *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995).

¶39     These courts have made clear, however, that a trial court should not have to engage in "inferential gymnastics or resort to implausible levels of abstraction to divine similarity." *Jawara*, 474 F.3d at 578. Nor does a general similarity or similarity of subject matter alone suffice. *See, e.g., id.* at 579 (concluding that the joinder of two cases was impermissible under Fed. R. Crim. P. 8 because the only similarity between the two cases was that they involved immigration matters); *United States v. Buchanan*, 930 F. Supp. 657,

662, 665–67 (D. Mass. 1996) (explaining that neither a "vague thematic connection" nor a general or abstract similarity between two cases is sufficient to justify joinder).

¶40 Here, we need not articulate an all-encompassing definition of "same or similar character" because, in our view, any definition of that phrase would encompass, at a minimum, the principles articulated in the foregoing federal case law. Applying those principles here, we perceive no reversible error in the trial court's finding that the cases at issue were of the same or similar character. As the trial court observed, with ample record support, the alleged offenses all (1) involved assaults of one or more women; (2) occurred in the open air and in relatively isolated places; (3) involved threats with a weapon; (4) occurred within a six-month period of one another; and (5) involved a largely disguised assailant who attempted to view the women's breasts or genitalia by pulling up their shirts, moving or removing their clothing, or demanding that they do so.

¶41 Moreover, the two cases shared common evidence, and the investigations in the cases were intertwined, particularly given T.B.'s testimony and the letters that Bondsteel had written to T.B. in which he implicated himself in both sets of crimes.

¶42 In these circumstances, we conclude that the resemblances and commonalities between the Motorcycle and Signal Mountain Trail Cases were sufficient to establish the "same or similar character" envisioned by Crim. P. 8(a)(2), and we thus reject Bondsteel's suggestion that the cases shared only the most basic and general similarities and that they were so fundamentally and strikingly different that the requirements of Crim. P. 8(a)(2) were not met.

14

### 3. Cross-Admissibility Under CRE 404(b)

¶43 Bondsteel next contends that because the cases were not sufficiently similar, the evidence of the underlying acts in one case would not have been admissible under CRE 404(b) in a separate trial of the other. Again, we disagree.

¶44 As an initial matter, we note that joinder under Crim. P. 8(a)(2) does not always require the evidence of the respective incidents to be cross-admissible were there to be separate trials. To the contrary, when the cases are of the "same or similar character," joinder under Crim. P. 8(a)(2) is proper regardless of whether the evidence would be cross-admissible in separate trials. Accordingly, our conclusion that the offenses at issue here were of the same or similar character establishes the propriety of joinder, subject to the absence of prejudice from such joinder, regardless of whether the underlying acts in one case would have been admissible under CRE 404(b) in a separate trial of the other. Nonetheless, we will address Bondsteel's CRE 404(b) argument because he addressed it as a standalone issue and because it arguably informs the question of whether the joinder here was prejudicial.

¶45 We review a trial court's ruling on the admissibility of evidence under CRE 404(b) for an abuse of discretion, and we will disturb such a ruling on appeal only if it was manifestly arbitrary, unreasonable, or unfair. *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009).

¶46 CRE 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

15

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

¶47    In addition, our legislature has recognized that (1) "sexual offenses are a matter of grave statewide concern"; (2) such offenses "often are not reported or are reported long after the offense"; (3) these offenses "usually occur under circumstances in which there are no witnesses except for the accused and the victim"; and (4) "offenders often commit numerous offenses involving sexual deviance over many years, with the same or different victims, and often, but not necessarily, through similar methods or by common design." § 16-10-301(1), C.R.S. (2018).

¶48    Accordingly, the legislature has expressly noted that evidence of other sexual acts is particularly important and will typically be admissible in the prosecution of sexual offenses:

> [I]n the prosecution of sexual offenses, including in proving the corpus delicti of such offenses, there is a greater need and propriety for consideration by the fact finder of evidence of other relevant acts of the accused, including any actions, crimes, wrongs, or transactions, whether isolated acts or ongoing actions and whether occurring prior to or after the charged offense. . . .  [S]uch evidence of other sexual acts is typically relevant and highly probative, and it is expected that normally the probative value of such evidence will outweigh any danger of unfair prejudice, even when incidents are remote from one another in time.

*Id.*

¶49    Therefore, in cases involving allegations of sexual offenses, section 16-10-301(3) permits the prosecution to "introduce evidence of other acts of the defendant to prove the commission of the offense as charged for any purpose other than propensity."  Such purposes include (1) "[r]efuting defenses"; (2) "showing a common plan, scheme, design,

16

or modus operandi, regardless of whether identity is at issue and regardless of whether the charged offense has a close nexus as part of a unified transaction to the other act"; (3) "showing motive, opportunity, intent, preparation, . . . knowledge, identity, or absence of mistake or accident"; and (4) supporting "any other matter for which [the other acts evidence] is relevant." *Id.*

¶50    Before a trial court may admit other acts evidence under CRE 404(b) and section 16-10-301, however, it must ensure that the evidence is admissible under the four-part test set forth in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990). *See People v. Jones*, 2013 CO 59, ¶ 14, 311 P.3d 274, 277. Other acts evidence is admissible under *Spoto* if (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance is independent of the prohibited intermediate inference that the defendant was acting in conformity with his or her bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Spoto*, 795 P.2d at 1318. In addition, in determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, we afford the challenged evidence "the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *Nicholls v. People*, 2017 CO 71, ¶ 56, 396 P.3d 675, 687.

¶51    Here, the trial court properly analyzed the cross-admissibility of the evidence at issue under the *Spoto* test, and we perceive no abuse of discretion in the court's finding that evidence from each case would have been admissible in the trial of the other case.

¶52    With respect to the Signal Mountain Trail Case, the trial court reasonably determined that (1) the identity of the perpetrator and whether Bondsteel was motivated by a desire for sexual gratification were material issues, particularly given the attempted sexual assault count in that case, and the acts underlying the Motorcycle Case would bear on those issues; (2) evidence from the Motorcycle Case was logically relevant because this evidence made it more likely that Bondsteel's actions in the Signal Mountain Trail Case involved his knowing observation of one of the women victims' intimate parts without her consent and that these actions were for his own sexual gratification and constituted an attempt to inflict sexual intrusion or penetration; (3) the logical relevance was independent of any inference that Bondsteel had a bad character because the substantial similarities among all of the incidents rendered the facts of the Motorcycle Case relevant to the factual issues of motive, modus operandi, and intent in the Signal Mountain Trail Case; and (4) the probative value of the evidence from the Motorcycle Case was "very significant" and substantial and outweighed any danger of unfair prejudice.

¶53    Similarly, although the court made less detailed findings as to the admissibility of the evidence from the Signal Mountain Trail Case in the Motorcycle Case, the court's findings support the admissibility of such evidence under section 16-10-301(1) and CRE 404(b), particularly in light of the legislature's expressed preference for admitting such evidence in the prosecution of sex offenses. Specifically, in concluding that the evidence was admissible, the court found that "[c]ertain significant circumstances are the same, or closely similar, for all of the charged offenses." Each offense involved an attack on one or two women; each occurred in the "open air" but in an isolated place; each

18

involved the "display and, nearly always, the actual use of a weapon"; and the offenses occurred within a relatively short time span. On these facts, the court opined that the same analysis that supported the admission of evidence from the Motorcycle Case into the Signal Mountain Trail Case would support the reciprocal admission of evidence from the Signal Mountain Trail Case into the Motorcycle Case.

¶54 Although the trial court's analysis could, perhaps, have been more detailed, we perceive the court's above-referenced statements as reflecting findings that (1) evidence from the Signal Mountain Trail Case related to material facts in the Motorcycle case, including identity and motive; (2) such evidence was logically relevant because it made it more likely than not that Bondsteel had, in fact, asked the victims to expose their breasts and genitalia and that he did so for purposes of sexual gratification (e.g., "because it was fun"); (3) the logical relevance of such evidence was independent of the prohibited inference that Bondsteel acted in conformity with his bad character because the substantial similarity in the facts made the evidence from the Signal Mountain Trail Case relevant to show Bondsteel's motive, modus operandi, intent, and identity in the Motorcycle Case; and (4) the probative value of the evidence at issue outweighed any danger of unfair prejudice, presumably due to the significant similarity among all of the offenses at issue.

¶55 Although we acknowledge that the arguments favoring the admissibility of the Signal Mountain Trail evidence in the Motorcycle Case are perhaps weaker than the arguments favoring the admissibility of the Motorcycle Case evidence in the Signal Mountain Trail Case, we cannot say that the trial court's determination was manifestly

19

arbitrary, unreasonable, or unfair, particularly in light of the above-described legislative preference for admitting other acts evidence in cases involving sex offenses.

¶56     Accordingly, we perceive no abuse of discretion in the trial court's finding that the evidence from each case would have been admissible in a separate trial of the other case.

## 4.  Prejudice Under Crim. P. 14

¶57     Finally, Bondsteel contends that the joinder of the cases at issue was prejudicial because, in evaluating Bondsteel's guilt in each case, the jury was improperly influenced by evidence from the other case.  Again, we are unpersuaded.

¶58     Crim. P. 14 directs trial courts to sever counts or provide other relief if a defendant appears to be prejudiced as a result of joinder.  The Rule provides, in pertinent part, "If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses . . . in any indictment or information, or by such joinder for trial together, the court may order an election or separate trials of counts . . . or provide whatever other relief justice requires."

¶59     Because a court's decision as to whether to sever counts is discretionary, a defendant challenging a court's refusal to sever must show that the joinder caused "actual prejudice" and that the trier of fact was unable to separate the facts and legal principles applicable to each offense.  *People v. Garcia*, 2012 COA 79, ¶ 28, 296 P.3d 285, 290; *see also People v. Pickett*, 571 P.2d 1078, 1082 (Colo. 1977) (observing that, in determining whether a party would be prejudiced by the joinder of two cases, "[t]he important inquiry is whether the trier of fact will be able to separate the facts and legal theories applicable to each offense").

20

¶60     For several reasons, we do not believe that Bondsteel has established the requisite actual prejudice in this case.

¶61     First, for the reasons set forth above, the trial court properly found that evidence of the crimes at issue in each case would have been admissible in a separate trial of the other case. Accordingly, even had the cases been tried separately, the jury in each case may have been presented with evidence of the other crimes.

¶62     Second, the record does not support Bondsteel's suggestion that the jury was unable to separate the facts and law applicable to each case. *See Pickett*, 571 P.2d at 1082; *Garcia*, ¶ 28, 296 P.3d at 290. Here, the trial court instructed the jury that "[e]ach count charges a separate and distinct offense and the evidence and the law applicable to each count should be considered separately, uninfluenced by your decision as to any other count," and we must presume that the jury followed these instructions. *See Johnson v. People*, 2019 CO 17, ¶ 16, 436 P.3d 529, 533. Moreover, although the jury ultimately convicted Bondsteel of many of the charges against him, it also acquitted him of a number of charges brought in connection with both the Signal Mountain Trail and Motorcycle Cases and, in one instance, convicted him of a lesser-included offense. These verdicts suggest to us that the jury carefully considered each count and did not blur together the facts and legal theories involved in each case but rather kept them separate.

¶63     Third, as noted above, the evidence and investigations in the Motorcycle and Signal Mountain Trail Cases were intertwined and overlapping. As a result, even had there been separate trials in these cases, it would have been difficult, if not impossible, to keep evidence from each case out of a separate trial of the other.

21

¶64    Finally, in each case, the evidence against Bondsteel was strong. In the Signal Mountain Trail Case, the victims had identified Bondsteel as their assailant in separate line-ups, and DNA on the victims' belongings matched Bondsteel's DNA. In addition, T.B. testified that Bondsteel had confessed to her that he had committed the acts underlying both the Signal Mountain Trail and Motorcycle Cases, and he wrote letters to her apologizing for his conduct and seeking her help in establishing an alibi in the Signal Mountain Trail Case. And Bondsteel's actions in trying to dispose of evidence in the Motorcycle Case (e.g., in trading in his motorcycle because the police would be looking for it) are strongly indicative of his guilt.

¶65    Accordingly, like the trial court, we are not persuaded that the consolidation of the two cases at issue unfairly prejudiced Bondsteel.

### III. Conclusion

¶66    For the foregoing reasons, we conclude that Bondsteel was not required to renew at trial his pretrial objection to the joinder of the Motorcycle and Signal Mountain Trail Cases to preserve that objection for appellate review and therefore his pretrial objection sufficiently preserved his argument for appeal. On the merits, however, we conclude that the trial court did not reversibly err when it joined the two cases for trial because the requirements of Crim. P. 8(a)(2) and Crim. P. 13 were satisfied and Bondsteel established no actual or unfair prejudice from the joinder.

¶67    Accordingly, we affirm the judgment below.

22