The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 8, 2022

**2022COA100**

**No. 18CA1486, *People v. Vasquez* — Crimes — Felony Murder — Fourth Degree Arson**

A division of the court of appeals considers whether someone can be convicted of fourth degree arson for lighting another person's clothing on fire while that person is wearing the clothing. Answering that question in the affirmative, the division further concludes that the above-described act can serve as the predicate felony for felony murder under Colorado law.

COLORADO COURT OF APPEALS                                    2022COA100

Court of Appeals No. 18CA1486
Clear Creek County District Court No. 16CR55
Honorable Mark D. Thompson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John Anthony Vasquez,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE BERNARD*
Pawar and Brown, JJ., concur

Announced September 8, 2022

Philip J. Weiser, Attorney General, Katharine Gillespie, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1     This case presents two related questions of first impression in Colorado.  First, can someone be convicted of fourth degree arson for lighting another person's clothing on fire while that person is wearing the clothing?  Second, if so, can such an arson serve as the predicate felony for felony murder?  We answer both questions "yes."  Accordingly, we affirm the felony murder conviction of defendant, John Anthony Vasquez, and otherwise affirm the judgment of conviction.

## I.    Background

¶ 2     Defendant and the victim were in a relationship.  In June 2016, they decided to go camping with the victim's sons, who were then six and ten years old, near Idaho Springs.

¶ 3     The trip got off to a bad start.  They arrived at the destination after dark, and they could not figure out how to set up their tent.  This led to a shouting match, and defendant locked himself in their vehicle.  Eventually, one of the victim's sons called 911, but the victim reported that nothing was wrong.

¶ 4     Things would go very wrong.

¶ 5     In the morning, after everyone had spent the night in the vehicle, its battery was dead.  Defendant and the victim began to

1

argue again, and the argument escalated quickly. The victim grabbed a bottle of beer from which defendant had been drinking and smashed it. Defendant then picked up a can of gasoline, poured its contents on the victim, and lit her clothing on fire with a lighter. She suffered third-degree burns over most of her body. Although she lived long enough to be taken to the hospital, she died from her injuries.

¶ 6    The prosecution charged defendant with numerous offenses in connection with the victim's death, and the case proceeded to trial. The jury found him guilty of felony murder (with arson as the predicate felony), second degree murder, first degree assault, fourth degree arson, two counts of child abuse, criminal impersonation, and two counts of violation of a protection order.

## II.    Sufficiency of the Evidence

¶ 7    Defendant asserts that the evidence presented at trial was insufficient to support his conviction for arson and, by extension, his conviction for felony murder. More specifically, he submits that the evidence was insufficient because, (1) as a matter of law, one cannot be convicted of arson for lighting another person's clothing on fire while that person is wearing the clothing; and, (2) the

2

prosecution did not present enough evidence to establish that he set fire to anyone's property. We disagree with both contentions.

## A. Defendant's First Argument

¶ 8 Defendant's first argument is principally a question of statutory interpretation. We review such questions de novo. *People v. Weeks*, 2021 CO 75, ¶ 24. When interpreting a statute, our primary goal is to ascertain and give effect to the legislature's intent. *People v. Cali*, 2020 CO 20, ¶ 15. To do so, we start with the language of the statute, giving its words and phrases their plain and ordinary meanings. *Id.* We read those words and phrases in context, giving consistent effect to all the statute's parts, construing each provision in harmony with the overall statutory design. *People v. Harrison*, 2020 CO 57, ¶ 17. If the language is clear and unambiguous, we apply it as written. *Id.* at ¶ 18.

¶ 9 As is relevant to this case, the arson statute provides as follows: "A person who knowingly or recklessly starts or maintains a fire . . . on his own property or that of another, and by so doing places another in danger of death or serious bodily injury . . . commits fourth degree arson." § 18-4-105(1), C.R.S. 2021. "Fourth

degree arson is a class 4 felony if a person is thus endangered." §
18-4-105(2).

¶ 10     At trial, defendant asked the court to enter a judgment of
acquittal for the crime of felony murder.  He argued that Colorado's
fourth degree arson statute does not contemplate setting fire to a
person, and the prosecution alleged that he had poured gasoline on
the victim and then lit her on fire.  This was fatal to the felony
murder charge, he continued, because "the fact that she [was]
wearing clothing at the time should not be construed . . . to mean
that, somehow, her property is being set on fire and, as a result,
she . . . ends up injured."

¶ 11     The court rejected this line of reasoning, concluding that,
under section 18-4-105, "[t]here is absolutely no qualification with
respect to the term 'property' or its location or proximity to the
person involved," and that, in this case, the "property" at issue was
the victim's clothing.

¶ 12     Defendant repeats his argument on appeal, adding that the
court's interpretation "arguably converts fourth degree arson into a
specialized form of assault."  We are not persuaded because
defendant's argument sidesteps the clear language of the fourth

degree arson statute, specifically the phrase "starts or maintains a fire . . . *on* his own property or that of another." § 18-4-105(1) (emphasis added).

¶ 13     According to Webster's Third New International Dictionary 1574 (2002), the first subsense of "on" is that it is "used as a function word to indicate position over and in contact with that which supports from beneath." The relevant verbal illustration for this subsense of the word is "was built [on] an island." *Id.* Applying this definition, we can see that the phrase "on his own property or that of another" focuses on the location of the fire, as in the place where the fire was started or maintained — for example, on the accused's land — not on what was burned. To put it another way, fourth degree arson criminalizes knowingly or recklessly starting or maintaining a fire on property situated anywhere in Colorado, and by doing so endangering a person, a building, or an occupied structure.

¶ 14     Two other arson statutes focus on what was burned, instead of where the fire started, and they do so by using the word "to" instead of the word "on." First degree arson, as defined in section 18-4-102(1), C.R.S. 2021, prohibits "set[ting] fire *to* . . . any building

5

or occupied structure of another." (Emphasis added.) And second degree arson, as defined in section 18-4-103(1), C.R.S. 2021, prohibits "set[ting] fire *to* . . . any property of another . . . other than a building or occupied structure." (Emphasis added.)

¶ 15 Returning to the dictionary, we see that the word "to" in this sense is "used as a function word to indicate the receiver of an action or the one for which something is done or exists," as in the verbal illustration "make alterations [to] the text." Webster's Third New International Dictionary at 2401. So, for first degree arson, one must set fire to "a building or occupied structure of another"; for second degree arson, one must set fire to "any property of another" that is not a building or occupied structure.

¶ 16 Applying the preceding reasoning to this case, we conclude that defendant's contention is a red herring. It does not matter, for the purposes of fourth degree arson, that the victim was wearing clothing and that defendant ignited it after dousing her with gasoline. Under the statute's plain language, what matters was that defendant knowingly started a fire on the property of another (a campground), and that the fire placed the victim in danger of death or serious bodily injury.

## B.    Defendant's Second Argument

¶ 17    Defendant's second argument fares no better.  "[W]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the convictions."  *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).  Evidence is sufficient to support a conviction if "the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."  *People v. Donald*, 2020 CO 24, ¶ 18 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).

¶ 18    Based on defendant's briefing, his argument on appeal appears to be that his arson conviction must be vacated because the prosecution did not present enough evidence that he set fire to either his own property or anyone else's.  But, as we have explained, fourth degree arson applies to a fire that is set or maintained on property situated anywhere in Colorado that, for the purposes of this case, places the victim in danger of death or serious bodily injury.  The prosecution presented ample evidence

7

that defendant doused the victim with gasoline, lit her on fire, and caused her death, including forensic evidence and eyewitness accounts from both the victim's sons.

### III.  Independent Act

¶ 19    Defendant next contends that his felony murder conviction cannot stand because lighting the victim on fire was not independent of the homicide.  Refining this contention, he submits that the act that formed the basis for his arson conviction — lighting the victim's clothing on fire — was the same act that caused her death.  We are not persuaded.

¶ 20    This is another question of statutory interpretation, so we will apply the same interpretive rules here that we did when addressing defendant's sufficiency argument.

¶ 21    At the time of the offense in this case, Colorado law provided that a person could be convicted of first degree murder if,

> [a]cting either alone or with one or more persons, he or she commits or attempts to commit arson . . . and, in the course of or in furtherance of the crime that he or she is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone.

§ 18-3-102(1)(b), C.R.S. 2015.

¶ 22    Relying on out-of-state cases, defendant contends that the crime of felony murder requires that the predicate felony be independent of the killing itself. *See, e.g., Commonwealth v. Kilburn*, 780 N.E.2d 1237, 1240 (Mass. 2003)("The doctrine of felony-murder provides that 'the conduct which constitutes the felony must be "separate from the acts of personal violence which constitute a *necessary* part of the homicide itself."'" (quoting *Commonwealth v. Gunter*, 692 N.E.2d 515, 525 (Mass. 1998))).

¶ 23    In contrast to those states, however, Colorado law is clear and unambiguous about which offenses can serve as a predicate offense for felony murder, *People v. Medina*, 260 P.3d 42, 45 (Colo. App. 2010); it is the legislature's prerogative, not ours, to "define criminal offenses," *People v. Jackson*, 2020 CO 75, ¶ 39; and it is not our role to second-guess the legislature's determination that arson is one of those offenses, *Rowe v. People*, 856 P.2d 486, 489 (Colo. 1993). (Indeed, if the legislature ever wants to limit the application of the felony murder doctrine, it knows how to do so. Just last year, for example, it amended the Colorado criminal code to make felony murder a variation of second degree murder instead of first

degree murder, and it clarified that, for arson to be a predicate offense, it must be *felony* arson. Ch. 58, secs. 1-2, §§ 18-3-102, -103, 2021 Colo. Sess. Laws 235-36.)

¶ 24 Courts in states that have felony murder laws like Colorado's reach a similar result. For example, in *People v. Densmore*, 274 N.W.2d 811, 813-14 (Mich. Ct. App. 1978), the defendant contended that the arson charge should merge with the killing, thus barring a felony murder conviction, reasoning that, since the arson was "the means by which the killing was perpetrated, the arson . . . is an assault resulting in murder." The Michigan Court of Appeals disagreed: "Since the Legislature has seen fit to clearly enumerate the exclusive felonies which can underlie a felony-murder conviction, it would not comport with the legislative intent if we were to adopt [the] defendant's theory of merger." *Id.* at 814. Going on, the court made two pertinent observations: (1) arson, a predicate felony in the felony murder statute, did not share any elements with homicide that would require merger based on a "lesser included or cognate offense analysis," *id.*; and (2) "[t]aken to its logical conclusion, [the] defendant's argument would confine first-degree felony murder to cases where death was not intended

by the arsonist," which would be an "illogical" result that had "no support in case law or statutory enactment." *See also People v. Lewis*, 791 P.2d 1152, 1154 (Colo. App. 1989)("[I]nasmuch as both murder and assault are crimes which may underlie a felony burglary, there is no logic or reason to preclude a felony murder charge from being based upon a burglary charge that, in turn, is premised upon either an intent to assault or an intent to murder.").

¶ 25   Even if there was not this clear statutory rejection of defendant's contention, the crime of fourth degree arson was independent of killing in this case. To commit fourth degree arson, defendant had to "start[] or maintain[] a fire," § 18-4-105(1), and that act was felonious conduct that was independent of the victim's death. *See Densmore*, 274 N.W.2d at 814.

## IV.   Intent

¶ 26   Defendant also submits that his felony murder conviction cannot stand because the prosecution did not prove, beyond a reasonable doubt, that he had intended to commit arson "either before or contemporaneous with the killing act." We see things differently.

11

¶ 27    In part, this is another question of statutory interpretation, but it also concerns the sufficiency of the evidence. We have already articulated the relevant standards of review and legal principles for both issues.

¶ 28    So let us focus our attention on the clause "in the course of or in furtherance of the crime that he or she is committing or attempting to commit" in the felony murder statute. § 18-3-102(1)(b), C.R.S. 2015. The clause, with its disjunctive "or," permits a felony murder conviction if the prosecution proves beyond a reasonable doubt either that (1) a person died "in the course of" the commission or attempted commission of the predicate offense; or (2) a person died "in furtherance of" the commission or attempted commission of the predicate offense.

¶ 29    Although the statute certainly requires that the prosecution prove, beyond a reasonable doubt, all elements of the predicate offense, including the applicable mens rea, *Doubleday v. People*, 2016 CO 3, ¶ 26, it does not require that the prosecution prove, beyond a reasonable doubt, that the defendant formed the intent to commit the predicate offense either before or contemporaneously

with the killing act.  As a division of this court has determined, the statute

> does not require a finding that the defendant was committing the predicate felony at the time he caused a death. . . .  [A]s a matter of law, . . . the sequence of events is irrelevant as long as sufficient evidence is produced to show that a felony was committed by the defendant and that a death occurred during the commission of that felony.

*People v. Braxton*, 807 P.2d 1214, 1217 (Colo. App. 1990); *accord People v. Phillips*, 219 P.3d 798, 800-01 (Colo. App. 2009)("Where, as here, there is a close temporal and spatial relationship between a killing and a subsequent felony, the defendant's intent to commit the underlying felony may be inferred from the circumstances.").

¶ 30     What is more, even if defendant is correct about Colorado's felony murder statute imposing an order of operations or a "timing" requirement with respect to the predicate offense and the homicide — and we do not think that he is — it is unrefuted that if defendant set the victim on fire (a fact that he disputed at trial), the victim died as a result of her injuries.  So the victim's death necessarily occurred "in the course of" the commission of the predicate offense.

¶ 31     To the extent defendant asserts that, based on the

prosecution's theory that he intended to kill the victim, he could not

have intended to commit arson, our supreme court has made clear

that the prosecution need not prove that a defendant intended to

endanger anyone to convict the defendant of fourth degree arson.

*Copeland v. People*, 2 P.3d 1283, 1285-87 (Colo. 2000).  Instead, it

is enough that the prosecution proved that the defendant knowingly

or recklessly started the fire at issue.  *Id.*  As we have mentioned,

there is ample evidence that defendant knowingly or recklessly

started the fire in this case.

V.     Expert Testimony

¶ 32     We next address defendant's contention that the court

erroneously admitted certain expert testimony concerning the origin

and cause of the fire that killed the victim.  We are not persuaded.

A.     Standard of Review

¶ 33     In deference to a trial judge's "superior opportunity . . . to

assess the competence of [an] expert and to assess whether [an]

expert's opinion will be helpful to the jury," we review a court's

admission of expert testimony for an abuse of discretion.  *People v.*

*Rector*, 248 P.3d 1196, 1200 (Colo. 2011).  A court abuses its

14

discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People v. Baker*, 2021 CO 29, ¶ 29.

## B. Analysis

¶ 34    The Colorado Rules of Evidence govern the admissibility of expert testimony. CRE 702 states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

¶ 35    "The focus of a Rule 702 inquiry," our supreme court has explained, "is whether the scientific evidence proffered is both reliable and relevant." *People v. Shreck*, 22 P.3d 68, 77 (Colo. 2001). To determine whether the evidence is reliable, "a trial court should consider (1) whether the scientific principles as to which the witness is testifying are reasonably reliable, and (2) whether the witness is qualified to opine on such matters." *Id.* To determine whether the evidence is relevant, "a trial court should consider whether the testimony would be useful to the jury." *Id.* Expert testimony is useful if it "will assist the fact finder to either

understand other evidence or to determine a fact in issue." *People v. Ramirez*, 155 P.3d 371, 379 (Colo. 2007).

¶ 36 Expert testimony must also pass muster under CRE 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶ 37 "Concerns about conflicting opinions or whether a qualified expert accurately applied a reliable methodology go to the weight of the evidence, not its admissibility." *People v. Shanks*, 2019 COA 160, ¶ 12. And "concerns about the degree of certainty to which [an] expert holds his opinion are sufficiently addressed by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof rather than exclusion." *Est. of Ford v. Eicher*, 250 P.3d 262, 266 (Colo. 2011).

¶ 38 Defendant takes issue with three of the prosecution's expert witnesses: Jerry Means, Siegfried Klein, and Kelly Babeon. We will consider them one at a time, beginning with Means.

## 1. Means

¶ 39 Means was a fire investigator with the Colorado Department of Public Safety who investigated the fire in this case. Before trial, defendant moved to limit Means's testimony, asserting that his opinions about the origin and the cause of the fire were unreliable.

¶ 40 He asked the court for a hearing on this issue, and the court held one. After the hearing, the court issued a written order denying defendant's motion. Specifically, the court found that Means had "substantially complied" with the applicable standards and guidelines for fire investigation, that the scientific principles underlying those standards and guidelines were reasonably reliable, and that, to the extent Means deviated from the standards and guidelines, "[a]ny deviation . . . did not impair the reliability of his investigation or the principles he employed."

¶ 41 At trial, Means testified that, in his opinion, he had "no doubt" that the fire in this case had been set intentionally. He said that the fire started near a downed log about thirty feet from the fire pit at the campsite and that the source of ignition was one of two lighters, one found at the scene and the other found in defendant's pocket.

¶ 42    Defendant vigorously cross-examined Means about the methodology that he had employed.  Defendant also called his own expert witness to poke holes in Means's analysis and conclusions.

¶ 43    On appeal, defendant argues, as he did at the hearing, that the methods Means used to investigate the fire were unreliable because they were neither scientific nor compliant with the standards and guidelines for fire investigation.  He does not, however, contest the court's conclusion that the scientific principles underlying the standards and guidelines are reasonably reliable, and as we have mentioned, concerns about the accuracy of an expert's application of a reliable methodology go to the weight of the expert's testimony, not its admissibility.  The court therefore did not abuse its discretion by allowing Means to testify about the origin and the cause of the fire in this case.

2.    Klein

¶ 44    Defendant next asserts — and for the first time on appeal — that another of the prosecution's fire experts, Klein, offered similarly problematic testimony about the origin and cause of the fire and that, had he hewed more closely to the applicable standards and guidelines for fire investigation, he would have classified the fire's

18

cause as "undetermined" rather than "incendiary." But just like defendant's arguments with respect to Means's testimony, we view his contentions concerning Klein's testimony as going to the weight the jury should have afforded the testimony, not its admissibility.

### 3.    Babeon

¶ 45    Last, defendant asserts that Babeon, who was both a fact witness and an expert witness at trial, should not have been permitted to offer any expert testimony and, in his capacity as an expert witness, improperly invaded the jury's province.

¶ 46    With respect to defendant's first assertion, he submits that Babeon was not qualified to testify as an expert because his fire investigation experience was "limited to investigating building fires." But Babeon testified that he had been a firefighter for decades; that he conducted approximately a dozen fire investigations every year, complete with origin and cause findings; and that he had been trained to do so. As a result, we cannot say that the court's decision to recognize him as an expert in fire investigation was an abuse of discretion. Any relevant deficiencies in Babeon's investigative experience could have been fleshed out on cross-examination.

¶ 47    With respect to defendant's second concern, he argues that the court erred by allowing Babeon to tell the jury that, with respect to the cause of the fire in this case, he thought "there was something potentially involving a crime" and that, based on the severity of the victim's injuries, it was possible that the gasoline had been "put onto" the victim on purpose.  Although defense counsel did not object to the statements at trial, defendant now contends that they invaded the province of the jury by, in effect, providing an "expert opinion that the crimes of arson and murder had been proven."  We disagree with that conclusion.  Babeon's statements were far too equivocal to have usurped the jury's factfinding role.

## VI.    Prosecutorial Misconduct

¶ 48    Turning to defendant's prosecutorial misconduct allegations, he points to a handful of instances in which the prosecutors' statements at trial supposedly crossed the line.  Although some of the statements were improper, we are not convinced that any of the improper statements require us to reverse defendant's convictions.

### A.    Standard of Review

¶ 49    To evaluate a claim of prosecutorial misconduct, we follow a two-step process: first, we determine whether the prosecutor's

conduct was improper based on the totality of the circumstances; second, if the conduct was improper, we must decide whether it warrants reversal according to the applicable standard of review. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).

¶ 50    When a defendant objects at trial to misconduct, and the misconduct is not constitutional in nature, we review for harmless error, meaning that we will disregard the misconduct if "there is no reasonable probability that it contributed to the defendant's conviction." *Crider v. People*, 186 P.3d 39, 42 (Colo. 2008); *see also* Crim. P. 52(a) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). In contrast, when a defendant does not object at trial, we review the misconduct for plain error. *People v. Robinson*, 2019 CO 102, ¶ 19. Under this standard, "we will only reverse when the misconduct was 'flagrantly, glaringly, or tremendously improper.'" *Id.* (quoting *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005)).

B.    Analysis

¶ 51    Defendant claims that the prosecution engaged in misconduct both during its cross-examination of his fire expert and during its closing argument. We will deal with the statements in turn.

## 1. Cross-Examination

¶ 52    As we have mentioned, defendant hired his own expert, Thomas Fee, to testify about fire investigations. On direct examination, Fee told the jurors about his nearly five decades of experience as a fire investigator, including his many years working for a city in Los Angeles County. He further explained that the fire investigation standards at issue in this case did not exist until the early 1990s, and that, as a result, folks in the fire investigation community realized that they had been relying on "junk science" for years. For example, Fee testified that he had been laboring under a misconception about the effects of fire on concrete and had "testified to that in court."

¶ 53    On cross-examination, the prosecutor tried to get Fee to agree with the proposition that investigations by the Los Angeles County Sheriff's Office "don't hold a candle" to the investigation in this case. The defense objected to the question, and the court overruled the objection. Fee responded that, in his experience, investigations by the Los Angeles County Sheriff's Office are "very thorough."

¶ 54    Then, latching on to Fee's statements about improvements in fire investigations over the last half century, the prosecutor asked

Fee if his standards before the 1990s were "pretty lax." Fee responded that he disagreed that his standards were subpar, even if the industry's standards were. But, after Fee admitted that his own standards at the time relied on some bad science, the prosecutor continued: "So [it's] fair to say that on several occasions during that period of time, you testified in a court, and you gave false and misleading testimony." Fee disagreed that he had knowingly provided false and misleading testimony, but he admitted that he, along with "every other fire investigator in the profession," realized after the fact that they had been providing false and misleading testimony.

¶ 55    Next, the prosecutor asked Fee if he had a list of the cases between 1962 and 1990 in which he had presented false testimony and if he had ever taken any steps to remedy the false testimony that he gave in those specific cases. Fee said that he did not and had not.

¶ 56    Later, the prosecutor highlighted the amount of money that Fee had been paid for his work in this case, stating, "And after $24,000 worth of work, you have no definitive conclusion about how this fire started?" Fee answered that he did not "have the facts

23

to arrive at a conclusion on how this fire started." The prosecutor reprised this assertion during closing argument.

¶ 57     On appeal, defendant contends that the above-described portions of the prosecutor's cross-examination amounted to misconduct. We are not persuaded.

¶ 58     First, unlike defendant, we do not read the prosecutor's clumsy questioning about fire investigations in Los Angeles County as impermissibly vouching for the investigation in this case.

¶ 59     Second, the prosecutor's questioning about Fee's history as a witness was appropriate given his admission on direct examination that he had previously testified in court to "junk science."

¶ 60     Third, an expert witness's compensation is always fair game for cross-examination, *People v. Sommers*, 200 P.3d 1089, 1096 (Colo. App. 2008), and, if anything, we think the prosecutor's questioning worked in defendant's favor. As defendant tells us on appeal, Fee was hired to decide whether the evidence collected in this case was "sufficient to arrive at a scientifically based opinion" as to the origin and cause of the fire. Thus, Fee's answer to the prosecutor — the evidence was insufficient for that purpose — was entirely consistent with defendant's position that the prosecution's

24

experts should not be so sure about their conclusions.  For the same reasons, we are not persuaded that the prosecutor's related comment during closing argument was improper.

## 2. Closing Argument

¶ 61    Defendant also takes issue with different parts of the prosecutor's closing argument.  (We recognize that the prosecution did not respond to this contention in their answer brief.  Defendant asks us to treat this silence as an implicit confession of error.  Even if the prosecution *had* confessed error, we have an independent obligation to review the record and reach a just conclusion under the facts and the law.  *See Young v. United States*, 315 U.S. 257, 258-59 (1942)(A confession of error "does not relieve this Court of the performance of the judicial function.  The considered judgment of law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. . . .  [O]ur judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties.").)

¶ 62    As our supreme court has explained, closing arguments "must be confined to the evidence admitted at trial, the inferences that can

reasonably and fairly be drawn therefrom, and the instructions of law submitted to the jury." *People v. DeHerrera*, 697 P.2d 734, 743 (Colo. 1985). Moreover, "[a] prosecutor may not use arguments calculated to inflame the passions and prejudices of the jury, denigrate defense counsel, misstate the evidence, or assert a personal opinion as to the credibility of witnesses." *People v. Nardine*, 2016 COA 85, ¶ 35. At the same time, "a prosecutor has wide latitude in the language and presentation style used to obtain justice," *Domingo-Gomez*, 125 P.3d at 1048, and may employ rhetorical devices, engage in oratorical embellishment, and use metaphorical nuance, *People v. Carter*, 2015 COA 24M-2, ¶ 70.

¶ 63 We evaluate improper argument claims "in the context of the argument as a whole and in light of the evidence before the jury." *People v. Samson*, 2012 COA 167, ¶ 30.

¶ 64 At the outset of the prosecutor's closing argument, and over an objection from the defense, a prosecutor told the jurors a brief story about how as a child he was caught secretly lighting matches with a friend. Defendant argues that the story was irrelevant and impermissibly introduced the prosecutor's "personal knowledge" into the case. While we agree that the story was improper because

26

it was not confined to the evidence admitted at trial, there is no reasonable probability that it contributed to defendant's conviction.

¶ 65 Next, defendant contends that the prosecutor misstated the law when, in reference to the charges, he told the jury, "You can go in order of these charges any way you want, but with the murder charges, you want to start with the top charge first," and then, after an objection from the defense and being told to rephrase, "I'm suggesting to you analytically that you want to start at the first charge, the highest charge, of murder in the first degree. . . . If he is not guilty of that charge, then you would consider murder in the second degree."

¶ 66 Colorado is a "soft transition" jurisdiction, meaning that, when a defendant faces a charge that has lesser included offenses, "the jury need not unanimously acquit the defendant of the greater offense before considering the lesser included offenses." *People v. LePage*, 397 P.3d 1074, 1077 (Colo. App. 2011), *aff'd on other grounds*, 2014 CO 13. Accordingly, "it is error to instruct a jury that it must unanimously acquit a defendant of a greater offense before it may consider a lesser included offense." *People v. Zamarripa-Diaz*, 187 P.3d 1120, 1122 (Colo. App. 2008).

¶ 67   Defendant claims that the prosecutor's "suggestion" to the jury was a misstatement of law because it communicated that the jury was required to acquit him of first degree murder before it could consider any lesser included offense. We disagree. Telling a jury that it is a good idea to start with the greatest offense is not the same thing as telling the jury that it must do so. *People v. Bobian*, 2019 COA 183, ¶ 34.

¶ 68   Defendant also asserts that the prosecutor improperly appealed to the passions and prejudices of the jury when he stated that this case was "a tragedy" for the victim and her family, that the trial was "a public reckoning," and that the jury was "the conscience of our community." We agree that the prosecutor went too far with those comments. *See People v. Rodriguez*, 794 P.2d 965, 977 (Colo. 1990)("[W]e have held that prosecutors should not appeal to the jury to consider the wishes of the community in reaching a verdict."). Still, the comments played a small role in the argument as a whole, and given the strong evidence of defendant's guilt, we cannot say there is a reasonable probability that they contributed to his conviction.

¶ 69    Last, defendant contends that the prosecutor's rebuttal closing argument denigrated the defense by insinuating that defendant's attorney's closing argument "blamed [the victim's] family" for her death.  True, the prosecutor's argument on this point was an uncharitable interpretation of one of the statements defense counsel made during closing argument, but it was not improper.  *See People v. Collins*, 250 P.3d 668, 678 (Colo. App. 2010)("[A] prosecutor has considerable latitude in replying to opposing counsel's argument . . . .").

## VII.   Other Acts Evidence

¶ 70    Moving on, defendant asserts that the court erred by allowing the prosecution to introduce certain other acts evidence at trial.  We conclude that the court did not err.

### A.    Standard of Review

¶ 71    We review a trial court's ruling on the admissibility of other acts evidence for an abuse of discretion, and we will only disturb the court's ruling on appeal if it was manifestly arbitrary, unreasonable, or unfair.  *Bondsteel v. People*, 2019 CO 26, ¶ 45.

## B. Analysis

¶ 72　Before its recent amendment — and as it applies in this case — CRE 404(b) (2020) stated that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Such evidence could still be admitted, however, "for other purposes, such as proof of motive, . . . intent, . . . or absence of mistake or accident." *Id.* (The purposes listed are illustrative, not exhaustive, and "Rule 404(b) does not necessarily bar evidence when it is offered for any other purpose." *Perez v. People*, 2015 CO 45, ¶ 24.)

¶ 73　Additionally, in recognition "that domestic violence is frequently cyclical in nature, involves patterns of abuse, and can consist of harm with escalating levels of seriousness," the legislature enacted a law providing for the admission of evidence of other acts of domestic violence in prosecutions involving domestic violence. § 18-6-801.5, C.R.S. 2021.

¶ 74　For other acts evidence to be admissible under either Rule 404(b) or section 18-6-801.5, the trial court must first determine, by a preponderance of the evidence, that the other act happened and that the defendant committed the act. *People v. Garner*, 806

P.2d 366, 373 (Colo. 1991). (We note that the trial court did not make specific findings on this issue, but, based on the court's decision that this evidence was admissible, we conclude that the court implicitly decided that it was satisfied, by a preponderance of the evidence, that defendant had committed the other acts. *See People v. Warren*, 55 P.3d 809, 814 (Colo. App. 2002).)

¶ 75     After those threshold findings, the court must further find that (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance of the evidence is independent of the prohibited intermediate inference that the defendant has a bad character and committed the crime charged because he acted in conformity with his bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).

¶ 76     In this case, the court permitted the prosecution to introduce two instances of defendant's other acts at trial: (1) evidence of an argument between defendant and the victim that resulted in defendant damaging the victim's television; and (2) evidence that defendant had hit the victim's sons. Specifically, the court found

that the television incident was admissible to show that the victim's death was not, as defendant claimed, an accident, to show that defendant acted with intent, and to show that he had a motive. The court ruled that the evidence that defendant had hit the victim's sons was admissible to show why the six-year-old son had given contradictory statements about how the victim had died.

¶ 77   We conclude that the court did not abuse its discretion in either instance. The television incident was plainly admissible under section 18-6-801.5 to rebut defendant's accident defense. The abuse evidence, meanwhile, was admissible to explain that the reason the child had told different stories about how the victim died was because he was afraid of defendant. *See* 1 Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 6:26, Westlaw (database updated Jan. 2022) (noting that a defendant's uncharged misconduct may serve as the explanation for a witness's contradictory statements). Defendant's other concerns about the evidence lack merit.

## VIII.  Cumulative Error

¶ 78   Defendant next contends that he is entitled to a new trial because the cumulative effect of the errors in this case was to

32

deprive him of a fair trial. We are not persuaded. As we have explained, the only errors in this case were the two exceedingly brief instances of prosecutorial misconduct during closing arguments. Even in the aggregate, the errors did not deprive defendant of a fair trial because they were not so prejudicial that, collectively, they substantially affected the trial's fairness or the integrity of the trial's factfinding process. *See Howard-Walker v. People*, 2019 CO 69, ¶¶ 24-25.

## IX. Mittimus Correction

¶ 79 Finally, defendant asserts that his mittimus must be corrected — by applying Crim. P. 36, a rule concerning clerical mistakes — to reflect that his conviction for second degree murder merges into his conviction for felony murder. Although we agree that his murder convictions merge, *see People v. Wood*, 2019 CO 7, ¶ 27 ("[U]nder Colorado law, '[o]nly one conviction of murder is permitted for the killing of one victim.'" (quoting *People v. Lowe*, 660 P.2d 1261, 1270-71 (Colo. 1983))), we disagree that Crim. P. 36 is the proper vehicle for relief because the court did not make a clerical error in this case. The appropriate remedy is for us to return the case to the trial court so that the court can vacate defendant's conviction

for second degree murder, leaving his conviction for felony murder intact. *Page v. People*, 2017 CO 88, ¶ 20.

¶ 80    The judgment is affirmed, and the case is remanded to the trial court with directions to vacate defendant's conviction for second degree murder, leaving his conviction for felony murder intact.

JUDGE PAWAR and JUDGE BROWN concur.