Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 9, 2019

**2019 CO 102**

**No. 17SC823,** *People v. Robinson*—Criminal Trials—Opening Statements—
**Prosecutorial Misconduct—Evidence.**

This case requires the supreme  court to decide whether a court of appeals
division erred in concluding that a prosecutor's race-based comments in her
opening statement constituted reversible plain error.   The supreme  court
concludes that the prosecutor's comments on the contrasting skin tones of the
defendant and the victim were improper because any probative value that these
comments might have had was substantially outweighed by the danger of unfair
prejudice to the defendant.   The court further concludes, however, that, on the
facts presented here, the prosecutor's comments did not rise to the level of
reversible plain error because even if obvious (an issue that the court need not
decide), the error did not so undermine the fundamental fairness of the
defendant's trial as to cast serious doubt on the reliability of his judgment of
conviction.

Accordingly, the supreme court reverses the division's judgment and remands for further proceedings consistent with this opinion.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

### 2019 CO 102

---

### Supreme Court Case No. 17SC823

*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1795

---

### Petitioner:

The People of the State of Colorado,

v.

### Respondent:

Marcus Lee Robinson.

---

### Judgment Reversed
*en banc*
December 9, 2019

---

**Attorneys for Petitioner:**
Daniel May, District Attorney, Fourth Judicial District
Doyle Baker, Senior Deputy District Attorney, Fourth Judicial District
Jennifer Darby, Deputy District Attorney, Fourth Judicial District
*Colorado Springs, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Colorado State Public Defender
Lynn Noesner, Deputy State Public Defender
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1      This case requires us to decide whether a court of appeals division erred in concluding that a prosecutor's race-based comments in her opening statement constituted reversible plain error.[1] We conclude that the prosecutor's comments on the contrasting skin tones of defendant Marcus Lee Robinson and the victim were improper because any probative value that these comments might have had was substantially outweighed by the danger of unfair prejudice to Robinson. We further conclude, however, that, on the facts presented here, the prosecutor's comments did not rise to the level of reversible plain error because even if obvious (an issue that we need not decide), the error did not so undermine the fundamental fairness of Robinson's trial as to cast serious doubt on the reliability of his judgment of conviction.

¶2      Accordingly, we reverse the division's judgment and remand for further proceedings consistent with this opinion.

---

[1] We granted certiorari to review the following issue:

> Whether the court of appeals erred in concluding that the prosecutor in a sexual assault trial committed plain error when she commented in opening statement on a race-based fact (the contrasting skin tones of the accused and the alleged victim) that was relevant to both an element of the crime charged and a material fact in dispute.

2

## I. Facts and Procedural History

¶3 A.M. and her roommate hosted a gathering for some co-workers in their apartment. A.M. drank heavily and eventually passed out on a couch. E.G., one of the guests at the party, fell ill after the alcohol that she drank reacted with a new medication that she was taking, and she fell asleep at the other end of the same couch on which A.M. had passed out.

¶4 Robinson arrived at the apartment later in the evening, when things were winding down. According to E.G., she woke to Robinson standing over her with his exposed penis in her face. She told him to get away from her, and he did. E.G. fell back asleep but subsequently woke to some motion on the couch. She then saw Robinson touching a still-unconscious A.M.'s breasts and leg. E.G. yelled at Robinson to leave A.M. alone and to get off of her, and he left the room. E.G. fell asleep again, but she claims to have been awakened a third time, this time by a "sexual motion, like a grinding." She allegedly saw Robinson vaginally penetrating the still-incapacitated A.M. E.G. screamed at Robinson, and after he left the apartment, she called 911 to report the sexual assault. Medical personnel arrived and attended to A.M., whom they found unconscious and with her leggings and underwear around her ankles. Ultimately, the medical personnel were able to rouse and treat her.

3

¶5 Robinson was arrested, and he admitted to the police that his initial intentions were to try to get A.M. to have sex with him. He, however, denied any sexual contact with her, claiming that she had said "no" several times and that he understood that "when you hear too many nos, that means no." Robinson also denied any sexual contact with E.G.

¶6 The People subsequently charged Robinson with multiple counts arising from the foregoing incidents. As to A.M., Robinson was charged with two counts of sexual assault (victim helpless), two counts of sexual assault (victim incapable), and two counts of unlawful sexual contact (victim helpless). *People v. Robinson*, 2017 COA 128M, ¶ 8, __ P.3d __. As to E.G., Robinson was charged with one count of attempted sexual assault (victim incapable), one count of attempted sexual assault (victim helpless), and one count of attempted unlawful sexual contact (victim helpless). *Id.*

¶7 The case proceeded to trial, and during voir dire, defense counsel, who was apparently sensitive to the underlying racial issues in this case (Robinson is African American, and A.M. is white), inquired of the prospective jurors whether there was anything about the difference in the parties' races that made anyone uncomfortable. No one indicated any concern. Counsel then asked several of the prospective jurors whether they would be comfortable bringing any improper discussion of race in the jury room to the attention of the court. These jurors said

4

that they would, and one of them noted that he understood that he could not allow racial considerations to influence him improperly.

¶8 Thereafter, during the prosecutor's opening statement, she described certain testimony that the jury purportedly would hear, stating:

> You're going to hear that [A.M.] is white. And she's actually pretty pasty. She's pasty white. And you obviously have seen Mr. Robinson is dark. He is an African American of dark complexion. [E.G.] looks over and she can see a dark penis going into a white body. That's how graphic she could see [sic].

Defense counsel did not object to these comments, and the trial court did not intervene sua sponte.

¶9 Later that day, E.G. took the stand and testified regarding her above-described allegations, including that when the medical personnel arrived, they found A.M. unconscious and with her leggings and underwear around her ankles (the prosecutor also introduced into evidence a photograph showing the condition in which the medical personnel had found A.M.). As pertinent here, after E.G. noted that A.M. was naked from the waist down, the prosecutor asked E.G. how she could see that in the dark room. E.G. responded, "[A.M.]—I hate to say it, but she's really, really white. So I could see that she was naked from the waist down." The prosecutor then asked E.G. what was going on at that point, and E.G. responded, "He was inside of her. He was having sex with her." Notwithstanding the fact that the prosecutor had thus presented evidence of

5

penetration without any reference to Robinson's race, the prosecutor proceeded to ask E.G. about Robinson's race and complexion. In response, E.G. described Robinson's complexion as "dark" and noted that he, too, was naked from the waist down and that she could see his butt clearly. The prosecutor then asked whether Robinson was "dark complected [sic]" at that location of his body as well, and E.G. answered, "Yes." In contrast to what the prosecutor suggested during her opening statement, however, E.G. did not testify to seeing "a dark penis going into a white body."

¶10 The following day, the sexual assault nurse examiner who had examined A.M. after the alleged assault testified that she found no injuries to A.M.'s genitalia, although she stated that this did not mean that A.M. was not sexually assaulted. In addition, a DNA analyst who had examined samples taken from A.M., Robinson, and the scene of the alleged assault testified that the test that she performed on the couch cushion did not detect any seminal fluid and that the amount of male DNA found on A.M.'s external genitalia was too small to allow her to draw any conclusions.

¶11 The jury ultimately acquitted Robinson of all of the charges related to E.G. and of all of the sexual assault counts against A.M., which included all of the counts that required proof of penetration. The jury convicted Robinson, however, of two counts of the lesser included offense of attempted sexual assault and two

6

counts of unlawful sexual contact as to A.M. The trial court sentenced Robinson under the Sex Offender Lifetime Supervision Act to an indeterminate term of four years to life in the Department of Corrections, followed by ten years to life on parole.

¶12 Robinson appealed, arguing, as pertinent here, that the prosecutor committed misconduct amounting to plain error when she made the above-quoted race-based comments during her opening statement. *Robinson*, ¶ 11. In a published opinion, the division agreed and unanimously reversed Robinson's convictions, with Judge Furman specially concurring. *Id.* at ¶¶ 47–68.

¶13 The division began by determining that the prosecutor's conduct was highly improper. *Id.* at ¶¶ 13–25. In reaching this conclusion, the division observed that the prosecutor "did not articulate to the jury any conceivably proper use of the race-based statements" that she had made in her opening statement. *Id.* at ¶ 17. The division further noted that E.G. never testified that Robinson's darker complexion allowed her to see the assault. *Id.* at ¶ 19. Rather, the only time that E.G. testified about Robinson's skin tone was in direct response to the prosecutor's questions about his race and complexion. *Id.* The division thus concluded that the prosecutor's comments were improper. *Id.* at ¶ 25.

¶14 Having so determined, the division proceeded to "the more difficult question" of whether the error required reversal and concluded that it did. *Id.* at

7

¶¶ 26–38. As pertinent here, the division deemed the error obvious because, except in "extremely rare circumstances," racially based statements are known to be "totally off-limits" in all courts in the United States. *Id.* at ¶ 27. The division further determined that this obvious error cast serious doubt on the reliability of Robinson's convictions because (1) the Supreme Court has made clear that errors involving racial discrimination must be treated with added precaution, given that racial bias implicates unique historical, constitutional, and institutional concerns; (2) racial bias can be overt or more subtle, but overt and subtle biases are equally prejudicial; (3) statements made early in a trial may carry disproportionate weight with the jury; and (4) comments that appeal to racial prejudice fundamentally undermine the principle of equal justice and therefore demand that an appellate court set appropriate standards to deter such conduct. *Id.* at ¶¶ 34–37. The division concluded, "Only by reversing Robinson's convictions and giving him a new trial without racial taint can we discharge this responsibility." *Id.* at ¶ 38.

¶15 Judge Furman specially concurred. *Id.* at ¶¶ 48–68 (Furman, J., specially concurring). He agreed that Robinson's convictions should be reversed but wrote separately to ask this court to provide guidance on when, if ever, it is proper for evidence or argument related to race to be presented to a jury. *Id.* at ¶ 48. Judge Furman discussed the equal protection and due process concerns attendant any time racial considerations come into play in a criminal proceeding, but he

8

recognized that in some cases, racial evidence or argument may be relevant (e.g., when race is pertinent to proof of the perpetrator's identity or of a defendant's motive for committing a particular type of hate crime). *Id.* at ¶¶ 51–52, 61.

¶16 The People petitioned this court to review the division's opinion, and we granted that petition.

## II. Analysis

¶17 We begin by setting forth the appropriate analytical framework for a prosecutorial misconduct claim and the applicable standard of review. Applying this analytical framework, we consider whether the prosecutor's race-based comments were improper, and we conclude that they were because any probative value that they might have had was substantially outweighed by the danger of unfair prejudice to Robinson. Finally, we assess whether this error, which was unpreserved, was plain, and we conclude, on the facts before us, that even if the error could be deemed obvious (a matter that we need not decide), the error did not substantially undermine the fundamental fairness of the trial so as to cast serious doubt on the reliability of Robinson's judgment of conviction.

### A. Analytical Framework and Standard of Review

¶18 We engage in a two-step analysis to review claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we must determine whether the prosecutor's conduct was improper "based on the totality

9

of the circumstances." *Id.* If we conclude that the conduct was improper, then we must decide whether such actions warrant reversal according to the proper standard of review. *Id.* Each step is analytically independent of the other. *Id.* Thus, we may conclude that a prosecutor's conduct was improper but nonetheless uphold the trial court's judgment because, for example, the error was harmless. *Id.*

¶19 When, as here, a defendant did not object at trial to the asserted misconduct, the plain error standard of review applies. *People v. Miller*, 113 P.3d 743, 745 (Colo. 2005). Plain error addresses error that was obvious and substantial and that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.* at 750. In the context of plain error review of prosecutorial misconduct, we will only reverse when the misconduct was "flagrantly, glaringly, or tremendously improper." *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)); *cf. People v. Constant*, 645 P.2d 843, 847 (Colo. 1982) (noting that prosecutorial misconduct in closing argument rarely is so egregious as to constitute plain error).

## B. The Race-Based Statements Were Improper

¶20 A prosecutor's interest in a criminal prosecution is not in winning a case, but in ensuring that justice is done. *Berger v. United States*, 295 U.S. 78, 88 (1935).

10

Accordingly, a prosecutor must refrain from using improper methods calculated to produce a wrongful conviction. *Harris v. People*, 888 P.2d 259, 263 (Colo. 1995). In particular, a prosecutor may not use arguments "calculated to inflame the passions or prejudice of the jury" or arguments that tend to influence jurors to reach a verdict based on preexisting biases rather than on the facts in evidence and the reasonable inferences to be drawn from those facts. *People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999).

¶21 Although all appeals to improper biases pose challenges to the trial process, the Supreme Court has observed that an appeal to racial bias should be treated with "added precaution" because "racial bias implicates unique historical, constitutional, and institutional concerns." *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 868–69 (2017).

¶22 Here, in her opening statement, the prosecutor noted the victim's "pasty white" skin tone, and she emphasized twice how Robinson is an African American of "dark" complexion. The prosecutor then stated that the jury would hear evidence that E.G. looked over and saw "a dark penis going into a white body," and she added, "That's how graphic she could see." Although the prosecutor's objective might have been to highlight a percipient witness's ability to see what the witness claimed to see, the prosecutor never directly explained the possible

11

relevance of these race-based statements to the jury, nor did E.G. ultimately testify to the "graphic" image that the prosecutor painted for the jury.

¶23 Although the record here is insufficient to allow us to determine either what prompted the prosecutor to make these statements (e.g., the record does not reveal whether E.G. had made such statements prior to trial), or what the prosecutor hoped to achieve by them, it is not difficult to discern that when a prosecutor injects racial considerations into a trial, the risk of unfair prejudice rises dramatically. Indeed, the fact that racial considerations were introduced here, in the context of alleged sex crimes, made the risk of prejudice particularly acute, given the history of racial prejudice in this country. *See Miller v. North Carolina*, 583 F.2d 701, 707 (4th Cir. 1978) ("Concern about fairness should be especially acute where a prosecutor's argument appeals to race prejudice in the context of a sexual crime, for few forms of prejudice are so virulent."). Although in limited circumstances, the race of a defendant, victim, or witness may be relevant, when a race-based argument "shifts its emphasis from evidence to emotion," the statement is improper. *United States v. Doe*, 903 F.2d 16, 25 (D.C. Cir. 1990). In our view, even if the prosecutor's statements here had some evidentiary basis (and the record is insufficient to allow us to draw a conclusion in that regard), any probative value of these statements was substantially outweighed by the risks of

unfair prejudice and the perception of an appeal to racial prejudice and stereotypes.

¶24 For several reasons, we are not persuaded otherwise by the People's assertion that the prosecutor's comments were proper because evidence of penetration was relevant and material to the prosecution's case in chief and that the prosecutor's statements merely explained how E.G. was able to observe the penetration in a darkened room.

¶25 First, at no time did the prosecutor directly explain that the contrast in skin tones between Robinson and A.M. was relevant to the issue of penetration, to how E.G. was able to see the penetration, or to any other evidentiary consideration. Nor did E.G.'s testimony suggest that it was. Indeed, E.G. said nothing in her testimony about Robinson's race or the darkness of his skin until the prosecutor inquired directly about those attributes (and the prosecutor did not ask about Robinson's race until after E.G. had testified that she saw Robinson inside of A.M., thereby making racial considerations irrelevant to the issue of penetration at that point).

¶26 Second, even if the prosecutor's race-based comments were premised on inferences drawn from E.G.'s anticipated testimony, the probative value of those

comments was speculative at best and was substantially outweighed by the danger of unfair prejudice to Robinson.[2]

¶27　For these reasons, we conclude that the prosecutor's race-based statements were unnecessary and therefore were improper.

## C. The Error Was Not Plain

¶28　Having concluded that the prosecutor's race-based statements were erroneous, we next must decide whether the error was plain, which, as the division below observed, poses a more difficult question. Determining whether the error here was plain requires us to decide whether the error was obvious and substantial and whether it so undermined the fundamental fairness of Robinson's trial so as to cast serious doubt on the reliability of his judgment of conviction. *People v. Miller*, 113 P.3d at 750. We address these issues in turn.

¶29　The question of whether the impropriety of the prosecutor's conduct was obvious presents a close question. On the one hand, an error is obvious when, among other things, the challenged action contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. *Scott v. People*, 2017 CO 16,

---

[2] We note that in a case in which racial considerations might be relevant and in which the relevance of such considerations is or is likely to be disputed, the better practice would be for the parties to bring the issue to the court's attention before trial to avoid the unwarranted and potentially prejudicial injection of race into the case.

¶ 16, 390 P.3d 832, 835. Here, the prosecutor's repeated references to race arguably violated a settled legal principle because courts have routinely found error when a prosecutor has referred to the defendant's race when race was not a legitimate area of inquiry and when the prosecutor repeatedly emphasized the race of those involved. *See, e.g.*, *State v. Rogan*, 984 P.2d 1231, 1240 (Haw. 1999) ("In this case, the deputy prosecutor's reference to Rogan as a 'black, military guy' was clearly inflammatory inasmuch as it raised the issue of and cast attention to Rogan's race. Because there was no dispute as to the identity of the perpetrator in this case, Rogan's race was not a legitimate area of inquiry inasmuch as race was irrelevant to the determination of whether Rogan committed the acts charged."); *Carter v. State*, 241 P.3d 476, 480 (Wyo. 2010) (noting that the prosecutor's repeated use of the terms "white guy" and "black guy" met the first prong of the plain error analysis).

¶30 On the other hand, "during opening statement, a prosecutor may refer to evidence that subsequently will be adduced at trial and draw inferences from that evidence." *People v. Estes*, 2012 COA 41, ¶ 23, 296 P.3d 189, 194. Here, the prosecutor's race-based comments were made in the context of suggesting to the jury what E.G. was apparently expected to say in her testimony. This testimony was at least possibly relevant to two evidentiary points, namely, (1) whether Robinson's alleged assault on A.M. included penetration and (2) how E.G. was

15

able to see such penetration in a darkened room. In these circumstances, we can discern a reasonable argument that the impropriety of the prosecutor's comments may not have been so obvious as to require the trial court to intervene sua sponte. Indeed, such an argument has particular force here, where the comments were made in opening statement and defense counsel did not object, notwithstanding the fact that during voir dire, she had made clear that she was sensitive to the issues of race presented in this case. *See People v. Rodriguez*, 794 P.2d 965, 972 (Colo. 1990) (noting that the lack of a defense objection to asserted prosecutorial misconduct might indicate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging).

¶31 We need not decide, however, whether the error at issue was obvious because even assuming, for the sake of argument, that it was, on the facts of this case, we cannot say that the error so undermined the fundamental fairness of Robinson's trial so as to cast serious doubt on the reliability of his judgment of conviction. We reach this conclusion for several reasons.

¶32 First, the trial judge instructed the jurors that they were not to allow bias or prejudice of any kind to influence their decisions in this case, and absent evidence to the contrary, we presume that the jury followed this instruction. *Bondsteel v. People*, 2019 CO 26, ¶ 62, 439 P.3d 847, 856.

¶33 Second, we note that the jury acquitted Robinson of every charge to which the improper statements were directed (i.e., every charge requiring proof of penetration). This indicates that the jury rejected the pertinent portions of E.G.'s testimony (and the prosecutor's assertions), and it tends to show that the jurors heeded the court's instruction not to allow bias or prejudice to influence their decisions. In addition, the fact that the jury acquitted Robinson of every charge to which the improper statements were directed tends to show that the jury could fairly and properly weigh and evaluate the evidence, notwithstanding the prosecutor's race-based comments. *See People v. Braley*, 879 P.2d 410, 414–15 (Colo. App. 1993) (noting that the fact that the jury acquitted the defendant of the charges for which allegedly improper evidence was offered indicates that the jury could fairly and properly weigh that evidence).

¶34 Accordingly, we conclude that the prosecutor's unnecessary and therefore improper race-based comments did not rise to the level of plain error.

### III. Conclusion

¶35 The prosecutor's race-based comments in her opening statement were improper because any probative value that they might have had was substantially outweighed by the danger of unfair prejudice to Robinson. We caution parties in future cases against injecting race into a case in which it is not a legitimate issue, and we reiterate our view that in a case in which racial considerations might be

17

relevant and in which the relevance of such considerations is or is likely to be disputed, the better practice would be for the parties to bring the issue to the court's attention before trial to avoid the unwarranted and potentially prejudicial injection of race into the case. On the facts presented here, however, where, among other things, Robinson was acquitted of every count to which the prosecutor's improper comments were directed, we cannot say that those comments so undermined the fundamental fairness of Robinson's trial as to cast serious doubt on the reliability of his judgment of conviction.

¶36    Accordingly, we reverse the division's judgment and remand this case for further proceedings consistent with this opinion.