23CA1617 Peo v Gonzales 03-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1617
Pueblo County District Court No. 23CR14
Honorable William Alexander, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John Lee Gonzales,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE JOHNSON
Harris and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 19, 2026

---

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Daniel J. Sequeira, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, John Lee Gonzales (Gonzales), appeals his judgment of conviction entered on a jury verdict finding him guilty of driving while ability impaired (DWAI) – fourth or subsequent offense. Gonzales asserts that the district court erred by (1) denying his motion to bifurcate; (2) admitting improper evidence under CRE 404(b); (3) allowing improper expert testimony; (4) denying his motion to suppress; (5) admitting blood sample evidence without an established proper chain of custody; and (6) allowing the prosecutor to engage in misconduct. He also contends that the alleged errors cumulatively require reversal.

¶ 2 We disagree and, therefore, affirm the judgment.

## I. Background

¶ 3 The prosecutor presented the following evidence upon which the jury found Gonzales guilty.

¶ 4 A police officer observed Gonzales drifting within his lane while driving a car with unlit license plate lights. The officer initiated a traffic stop. While speaking with Gonzales, who was alone in the car, the officer noticed a "moderate odor of an unknown alcoholic beverage coming from the vehicle." The officer also observed that Gonzales had "watery" eyes and a "blank stare," and that his

"speech was raspy and a bit disjointed." Gonzales mentioned to the officer that he had "had a few beers" with a friend.

¶ 5     Because the officer had concerns about Gonzales's ability to operate the car, he asked Gonzales to perform standard field sobriety tests. Gonzales's performance during the tests led the officer to determine that he was incapable of operating the vehicle safely. The officer then arrested Gonzales.

¶ 6     Another officer then conducted a drug recognition evaluation (DRE) of Gonzales. And an "ultraviolet test" performed on Gonzales's tongue by this officer indicated potential recent cannabis use. Gonzales's performance during the DRE led the second officer to conclude that Gonzales was incapable of safely operating the car due to the combined influence of cannabis and alcohol.

¶ 7     Gonzales took a blood test approximately three hours after the traffic stop, the results of which were admitted into evidence and discussed during trial.

¶ 8     Gonzales was charged with driving under the influence (DUI) – fourth or subsequent offense (felony DUI). The jury found him guilty of the lesser included offense of DWAI – fourth or subsequent

offense. The district court sentenced Gonzales to two years in the custody of the Department of Corrections.

## II. Motion to Bifurcate

¶ 9 Gonzales argues the district court erred by denying his motion to bifurcate, which requested a separate trial on the prior convictions element of DUI or DWAI. We disagree.

### A. Standard of Review and Applicable Law

¶ 10 We review a ruling on a motion to bifurcate for an abuse of discretion. *See People v. Harris*, 2016 COA 159, ¶ 74. But whether a court has the authority to bifurcate a trial from other elements of the offense is a question of law that we review de novo. *People v. Kembel*, 2023 CO 5, ¶ 24.

### B. Analysis

¶ 11 At trial, Gonzales sought to bifurcate the prior convictions element from the remainder of the felony DUI elements. The district court denied the request, finding that the law was clear on this point based on *Kembel*. In that case, the supreme court held that a district court "may not bifurcate the elements of the offense of felony DUI (or of any offense) during a jury trial" because Crim. P. 14 allows for the severance of counts or defendants, but "it does not

3

authorize the bifurcation of *elements* of an individual offense charged." *Id.* at ¶¶ 38, 57.  Instead, *Kembel* indicated that a jury must be instructed that the evidence presented may only be considered for the "limited purpose of determining whether the [prosecution has] proved beyond a reasonable doubt each prior conviction included in the element of prior convictions and may not be considered for any other reason." *Id.* at ¶ 52.  Although *Kembel* acknowledged that there was a risk of prejudice in allowing the jury to hear evidence of a defendant's prior convictions during a felony DUI/DWAI trial, any prejudice was not unfair because the evidence is "always relevant and admissible" if the prior convictions are an element of the substantive offense charged.  *Id.* at ¶ 54.

¶ 12     Gonzales argues that our supreme court's decision in *Kembel* is no longer binding in light of the U.S. Supreme Court's decision in *Erlinger v. United States*, 602 U.S. 821 (2024).  We disagree for three reasons.

¶ 13     First, *Erlinger* was not decided until after Gonzales's trial, so even assuming there was merit to this contention, the district court properly relied on *Kembel* at the time of trial.

¶ 14    Second, *Erlinger* is inapposite to this situation.  The language

Gonzales relies on from *Erlinger* recognizes that proof of prior

convictions can be bifurcated from the substantive offense, but this

observation has no relevance to *Kembel*'s holding that prohibits

bifurcation of the prior convictions in the DUI/DWAI context when

the prior convictions are elements of the offense.

¶ 15    At issue in *Erlinger* was whether the defendant was entitled to

have a jury determine whether his prior offenses were committed on

separate occasions under the Armed Career Criminal Act (ACCA).

*Id.* at 834-35, 840.  For enhanced sentencing under the ACCA to

apply, the defendant's predicate offenses that included "violent

felon[ies]" or "serious drug offense[s]" had to be "committed on

occasions different from one another," which the Supreme Court

held was a fact-laden inquiry.  *Id.* at 834 (quoting 18 U.S.C.

§ 924(e)(1)).  Those predicate offenses, however, were not elements

of the underlying substantive offense.  Therefore, the ACCA is

different from Colorado's DUI/DWAI statutory scheme.

¶ 16    Finally, without "some clear indication" that *Kembel* has been

overruled, we are bound by supreme court precedent.  *Silver v. Colo.*

*Cas. Ins. Co.*, 219 P.3d 324, 330 (Colo. App. 2009) (noting that the

court of appeals is not at liberty to disregard a rule announced in a supreme court case without "some clear indication" that the case has been overruled).  Thus, even assuming *Erlinger*'s language on bifurcation was more than dicta, if supreme court precedent "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions," the court of appeals should apply "the case which directly controls," leaving the supreme court with "the prerogative of overruling its own decisions."  *People v. Denhartog*, 2019 COA 23, ¶ 78 (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).  This means we must follow *Kembel*, as it is the most direct case on point, and leave it to the supreme court to overrule its own precedent.

¶ 17    Thus, the district court did not err when it denied Gonzales's motion to bifurcate.

### III.    Evidentiary Rulings

¶ 18    Gonzales claims the district court erred by admitting irrelevant and prejudicial evidence in violation of CRE 404(b) — specifically, (1) portions of Gonzales's driving record and prior conviction exhibits and (2) expert testimony about "past cocaine use."  As to the first issue, we agree that the court erred, but we conclude that

6

the error was harmless. As to the second issue, we assume without deciding that there was error but conclude that it too was harmless.

## A. Additional Facts

¶ 19 Gonzales objected on hearsay grounds to the admission of his certified driving record and records of his prior DWAI convictions, which comprised three separate trial exhibits. The district court overruled the hearsay objection but instructed the prosecutor to redact all of the "collateral" information about Gonzales's prior probation revocations from the exhibits, reiterating, "You've got the record of conviction. That's all." The prosecutor said he would redact the information over the lunch break and provide the exhibits to the court.

¶ 20 From our review of the record, it appears that the three exhibits were not properly redacted, as the documents still contained information about Gonzales's prior DUI charges that did not result in convictions and a probation revocation. At the end of the trial, the district court included a jury instruction informing the jurors that prior conviction evidence may not be considered "as evidence that the defendant [was] more or less likely to have committed the charged offense or any lesser offenses."

¶ 21     The jury submitted a question during deliberations about the exhibits, asking "what about the defense attorney[']s argument involving the trial exhibits" since the jury was provided the "entire document."

¶ 22     Gonzales also objected to expert testimony about the presence of benzoylecgonine, a metabolite of cocaine, in his blood test, which the expert opined indicated past cocaine use. The district court ultimately overruled the objection, allowing the expert to testify that the presence of the metabolite indicated "past cocaine use."

                    B.     Standard of Review and Applicable Law

¶ 23     We review a district court's evidentiary rulings "for an abuse of discretion." *Rojas v. People*, 2022 CO 8, ¶ 16. A court abuses its discretion where "its ruling is 'manifestly arbitrary, unreasonable, or unfair,' or where it is based on an erroneous view of the law." *People v. Elmarr*, 2015 CO 53, ¶ 20 (quoting *People v. Stewart*, 55 P.3d 107, 122 (Colo. 2002)).

¶ 24     Preserved evidentiary errors are reviewed for harmless error. *See People v. Quillen*, 2023 COA 22M, ¶ 14. Under this standard, error requires reversal unless it has been shown "that there is 'no reasonable possibility that [the error] contributed to the defendant's

8

conviction.'" *People v. Vigil*, 2024 COA 72, ¶ 20 (quoting *People v. Baker*, 2019 COA 165, ¶ 13).

¶ 25    Evidence of other crimes or bad acts is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character. CRE 404(b)(1). However, such evidence of other acts or crimes suggestive of bad character is admissible if (1) it is logically relevant, (2) to a material fact, (3) independent of the prohibited inference of the defendant's bad character, and (4) its probative value is not substantially outweighed by the risk of unfair prejudice. *Rojas*, ¶ 28.

### C.    Analysis

#### 1.    Driving Record and Prior Convictions Evidence

¶ 26    The Attorney General does not fully concede that the court erred by inadvertently allowing the jury to review the unredacted driving records but does acknowledge that the prosecutor agreed he would redact the documents and apparently did not. Even so, the Attorney General contends that the prosecutor did not engage in bad faith and, thus, Gonzales's conviction should not be reversed. And the Attorney General contends that this issue is not preserved because Gonzales is objecting on different grounds on appeal than

9

he relied on below. Even assuming the district court erred by allowing the jury to view the unredacted exhibits, any error was harmless for three reasons.

¶ 27 First, this case is similar to *People v. Schlehuber*, 2025 COA 50, ¶¶ 50-52, in which a division of this court determined that extraneous information admitted into evidence at the defendant's felony DUI trial — the defendant's prior charged but dismissed offenses, probation violations, and comments that although the defendant had been provided many "rehabilitative efforts," he appeared to be unable to "adopt a more conventional lifestyle and avoid legal conflicts" — was error, but harmless. The division determined, as relevant here, that the jury had heard testimony "that [the defendant] had a history of alcohol-related convictions," which was at least as prejudicial as the challenged documentary evidence, and the jury was properly instructed on how it could use the prior convictions evidence. *Id.* at ¶¶ 52, 54; *see also People v. Carian*, 2017 COA 106, ¶ 44 (determining that prior drug offense likely had minimal impact on the jury when the jury was already aware of evidence that the defendant had issues with drugs).

¶ 28    Like in *Schlehuber*, the jury heard about Gonzales's three prior DWAI convictions, rendering the information about his prior DUI charges that did not result in convictions less prejudicial. And the jury was properly instructed that it could use the three exhibits solely to determine whether the prosecution had proved beyond a reasonable doubt that Gonzales had three or more qualifying convictions. *See Schlehuber*, ¶ 54.

¶ 29    Second, the prosecutor did not mention in his closing argument the improper evidence about Gonzales's prior probation revocation or charged DUIs that did not result in convictions.

¶ 30    And finally, Gonzales makes no argument as to how there was a reasonable possibility the extraneous information contributed to his conviction. He argues that because there was error, it is reversible; but the introduction of improper criminal history evidence does not by itself necessarily require reversal if that error did not prejudice the defendant.

¶ 31    Therefore, we conclude that the error was harmless because there is no reasonable possibility that the admission of the improper evidence in the partially redacted exhibits contributed to Gonzales's conviction. *See Vigil*, ¶ 20.

## 2.    Evidence of Prior Cocaine Use

¶ 32    The prosecution's expert testified that four drugs were present in Gonzales's blood test, one of which was benzoylecgonine, a cocaine metabolite indicating prior cocaine use.  Gonzales contends that this testimony was improperly admitted under CRE 404(b).

¶ 33    Even assuming the court erred by allowing this testimony, it was harmless.  The evidence against Gonzales that he was driving while under the influence of alcohol or drugs was strong: The officer testified that he observed indicia of Gonzales's intoxication; Gonzales failed the field sobriety tests twice; four drugs — one of which was methamphetamine suggesting more recent drug use — were present in his blood; Gonzales had alcohol containers in his car; and he admitted to drinking and taking drugs.  Given that the expert's testimony amounted to one brief sentence, and the expert testified more thoroughly that the benzoylecgonine indicated only past cocaine use because the metabolite was not active in Gonzales's central nervous system, we cannot say that based on the other properly admitted evidence, there was a reasonable possibility that this error contributed to Gonzales's conviction.  *See Vigil*, ¶ 20.

## IV. Expert Testimony

¶ 34 Gonzales argues the district court erred by admitting expert testimony relating to the effects of cocaine and methamphetamine use. We disagree.

### A. Additional Facts

¶ 35 As discussed, the prosecutor's drug expert testified that Gonzales had benzoylecgonine present in his blood. The expert also testified that methamphetamine and amphetamine, a metabolite of methamphetamine, were found at detectable levels in Gonzales's blood, and he testified about the impairing effects of the drug, including during the withdrawal phase. In response to the prosecutor's questions, the expert explained that cocaethylene is another metabolite of cocaine. Neither cocaine nor cocaethylene was detected in Gonzales's blood sample.

### B. Standard of Review and Applicable Law

¶ 36 We review the admission of expert testimony "for an abuse of discretion and will reverse only when that decision is manifestly erroneous." *People v. Cooper*, 2021 CO 69, ¶ 44 (quoting *People v. Rector*, 248 P.3d 1196, 1200 (Colo. 2011)).

¶ 37    When determining whether expert testimony is admissible under CRE 702, district courts employ "a *Shreck* analysis, which requires that: (1) the scientific principles underlying the testimony are reasonably reliable; (2) the expert is qualified to opine on such matters; (3) the expert testimony will be helpful to the jury; and (4) the evidence satisfies CRE 403." *Rector*, 248 P.3d at 1200; *People v. Shreck*, 22 P.3d 68 (Colo. 2001).  To satisfy CRE 403, the probative value of the expert testimony must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

## C.    Analysis

¶ 38    Gonzales claims that the probative value of the expert's testimony was outweighed by the danger of unfair prejudice, misleading the jury, and confusing the issues in violation of CRE 403.  He argues that the jury heard significant, prejudicial evidence about methamphetamine and cocaine despite (1) a lack of evidence that Gonzales was under the influence of those substances at the time he was operating the vehicle and (2) the officers' testimony that their concerns were alcohol and cannabis.  We disagree for two reasons.

14

¶ 39    First, the evidence was relevant to explain that the

methamphetamine may have impaired his driving, and the expert

mitigated any prejudice by explaining that the inactive metabolites

did not affect the central nervous system.  The fact that the officers

may have been unaware of these other substances does not make

the results of the blood test irrelevant.  And while the expert did not

opine on whether the amounts of the drugs found in Gonzales's

blood would have caused impairment, she testified that combining

drugs increases the likelihood of possible impairment during even

the withdrawal period.  In short, this testimony helped the jury

understand and contextualize relevant evidence of what substances

were present in Gonzales's system based on the blood test.

¶ 40    Second, while this evidence was prejudicial, it was not *unfairly*

so.  *See Kembel*, ¶ 53 (the fact that evidence is prejudicial does not

render it inadmissible; only unfairly prejudicial evidence is

inadmissible).  Unfair prejudice is not "prejudice that results from

the legitimate probative force of the evidence." *People v. Gibbens*,

905 P.2d 604, 608 (Colo. 1995).  Again, the expert made clear that

she did not know whether Gonzales was impaired at the time he

15

was driving, testifying only about the general effects that might occur if such substances were present in a person's blood.

¶ 41 Thus, the district court did not err in allowing the expert testimony.

## V. Motion to Suppress

¶ 42 Gonzales asserts the district court erred by denying his motion to suppress because (1) it misapplied the law regarding reasonable suspicion and (2) there was not an objectively reasonable basis for the traffic stop. We disagree.

## A. Additional Facts

¶ 43 Gonzales filed a motion to suppress evidence obtained during the traffic stop, which the district court denied in an oral ruling. After reviewing body worn camera footage and hearing testimony, the court recounted the facts leading up to the stop — that Gonzales's license plate lights were not working and that his car was swerving in its lane — finding that the officer had reasonable suspicion to "conduct a traffic stop." The district court also found, based on its review of the footage and the officers' testimony about Gonzales's behavior, that there was probable cause to arrest him for DUI.

### B. Standard of Review and Applicable Law

¶ 44    When reviewing a ruling on a motion to suppress, we "defer to a trial court's findings of fact if they are supported by competent evidence in the record." *People v. Campbell*, 2018 COA 5, ¶ 9 (citing *People v. King*, 16 P.3d 807, 812 (Colo. 2001)). Questions of law are reviewed de novo. *People v. Minor*, 222 P.3d 952, 955 (Colo. 2010).

¶ 45    An officer "with 'an objectively reasonable basis to believe that a driver has committed a traffic offense' is justified in making a stop." *People v. Chavez-Barragan*, 2016 CO 16, ¶ 11 (quoting *People v. Vaughn*, 2014 CO 71, ¶ 11).

¶ 46    When deciding whether a lawful traffic stop was unreasonably extended, we must "consider[] the facts and circumstances that gave rise to the initial stop plus any additional information learned by the officer before issuing a warning or citation." *People v. Gamboa-Jimenez*, 2022 COA 10, ¶ 39 (quoting *People v. Cervantes-Arredondo*, 17 P.3d 141, 148 (Colo. 2001)).

### C. Analysis

#### 1. Reasonable Suspicion

¶ 47    The district court did not misapply the law relating to reasonable suspicion.

17

¶ 48     The record supports the court's conclusion that the officer had reasonable suspicion to initiate a traffic stop.  The officer testified that Gonzales was weaving within the boundary of his lane and that his license plate lights were unlit, a traffic infraction.  *See* § 42-4-206(3), C.R.S. 2025.  The district court also relied on the dashcam video and made findings that the license plate was not lit.  And we must defer to the court's finding that the officer's testimony was credible.  *See People v. Griffiths*, 251 P.3d 462, 465 (Colo. App. 2010) ("We do not reweigh the evidence or assess witnesses' credibility on appeal because the jury is the sole judge of witness credibility.").

¶ 49     As other divisions of this court have held, a traffic infraction — even a minor one — may constitute reasonable suspicion for an officer to pull over a vehicle.  *See Chavez-Barragan*, 2016 CO 16, ¶ 20 (holding that reasonable suspicion supported a traffic stop where the defendant had weaved across a traffic lane); *see also People v. Brant*, 252 P.3d 459, 462 (Colo. 2011) ("A traffic infraction, such as driving with a broken taillight, is sufficient justification for a police vehicle stop.").

18

¶ 50     Nonetheless, Gonzales argues that the court erred by relying on the "cumulative effect" of three buckets of evidence for the initial stop: the lamp light and reflectors, the fictitious plates, and the suspicions of DUI.  But we do not read the court's ruling in that manner.  In finding reasonable suspicion for the stop, the court relied on the lack of a functioning license plate light, noting that the license plate was only visible because of the officer's headlights and the "reflective nature of the plates."  The court also relied on Gonzales's "swerving slowly within the boundaries of the marked lane."  But the court did not rely on the fictitious license plates because "[i]t wasn't entirely clear" from the testimony whether the officer initiated the stop because of the fictitious plates or only learned of this information after speaking with Gonzales.  Although the court referred to the cumulative effect of these facts, a reasonable interpretation of the court's ruling is that it did not rely on the fictitious plates or other information gathered by the officer after making contact with Gonzales in determining whether reasonable suspicion existed to stop Gonzales.

¶ 51 Because the district court's conclusion that there was reasonable suspicion for the officer to conduct a traffic stop is supported by competent evidence in the record, we discern no error.

### 2. Objectively Reasonable Basis for the Traffic Stop

¶ 52 Gonzales also argues that the officer did not have an objectively reasonable basis to initiate the traffic stop because the officer was mistaken about the law.

¶ 53 Gonzales argues that the officer was sixty feet from Gonzales's car when he stopped him, and state law only requires license plate legibility within fifty feet of the rear of a vehicle; thus, he contends that the officer had no objectively reasonable justification for the stop. *See* § 42-4-206(3) ("Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear.").

¶ 54 This is beside the point. The dashcam footage supported the district court's findings that the license plate light was out, and the only reason the license plate was illuminated was because of the officer's headlights. The purpose of the statute is to ensure license plates are clearly visible, illuminated by either a license plate light

20

or tail lamps, and though Gonzales had working tail lamps, the dashcam footage supports that the license plate was not illuminated and clearly legible by the tail lamps. Therefore, it was the lack of illumination of Gonzales's license plate generally — not the distance between the vehicles — that gave rise to the officer's reasonable suspicion. Indeed, as the officer neared Gonzales's vehicle, the lack of illumination of Gonzales's license plate became even more stark because it was only visible due to the officer's headlights.

¶ 55    Thus, we discern no error.

## VI.    Blood Sample Evidence

¶ 56    Gonzales claims the district court erred by admitting blood sample evidence without a proper chain of custody. We disagree.

### A.    Additional Facts

¶ 57    Gonzales's blood sample was sent to the Colorado Bureau of Investigation (CBI), which tested it and generated a report. Photos of the kit and the corresponding CBI report were admitted during trial. One of the officers testified that he sealed, initialed, dated, and then stored the test-kit in a refrigerator before it was sent to CBI. A CBI analyst testified about the procedures CBI and law

enforcement followed while transferring the test-kit. The analyst testified that certain photos admitted into evidence were of the test-kit, taken by a technician when it was opened. But another individual at CBI, who did not testify at trial, broke the outer seal of the package and conducted initial testing before it reached the analyst.

## B. Standard of Review

¶ 58   As stated above, we review evidentiary rulings for an abuse of discretion. *Rojas*, ¶ 16.

## C. Analysis

¶ 59   Evidence must be authenticated to be admissible. CRE 901(a). To authenticate evidence, the proponent must produce "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* "'[S]o long as the evidence was accounted for at all times, the evidence is admissible'[;] . . . absent any evidence of tampering or lack of authentication, the proponent of the evidence is not required to call each witness who may have handled the item." *People v. Valencia*, 257 P.3d 1203, 1206 (Colo. App. 2011) (quoting *People v. Atencio*, 565 P.2d 921, 923 (Colo. 1977)).

¶ 60   Contrary to Gonzales's assertion, the blood test-kit was accounted for at all times, so the prosecutor was not required to call each witness who handled the kit. *See id.* The CBI analyst and the officer established through testimony that both entities photographed and catalogued the kit's chain of custody from intake through testing. *See id.* (where an expert describes an object as having identifying marks placed on the item or its packaging, and there is no evidence of any interim tampering, such identification may well be sufficient to justify its admission). And while Gonzales suggests that the investigation surrounding Yvonne "Missy" Woods at CBI suggests tampering, Gonzales has not pointed to any evidence in the record that she had any involvement with this case.[1] Absent actual evidence of Woods's involvement, we cannot infer tampering. Thus, we discern no error.

## VII.   Prosecutorial Misconduct

¶ 61   Gonzales argues the prosecutor committed reversible misconduct during closing arguments by (1) misstating facts and

---

[1] Yvonne "Missy" Woods is a former CBI DNA analyst now facing criminal charges for allegedly tampering with DNA testing evidence in "numerous cases over the course of decades." *People v. Sotade*, 2025 CO 38, ¶ 4.

making improper argument relating to cocaine; (2) referring to facts not in evidence; and (3) denigrating the defense. We disagree.

### A. Additional Facts

¶ 62    During closing arguments, the prosecutor said the following:

> And how do we know he is driving under the influence? Well, he's got a smorgasbord of drugs in his system. He's got alcohol. He's got methamphetamine. He's got a cocaine metabolite and, according to his own admission, his own statement, probably synthetic THC, cannabinoids in his system. If that doesn't make you substantially incapable, four cornucopias of medicines, I don't know what this is. I don't know what is substantially incapable. You saw it on the roadsides.

He also referred to the presence of cocaine in Gonzales's system.

¶ 63    Also, during closing arguments, defense counsel said:

> The [prosecutor] chose which clips to introduce as evidence. [The officer] claimed he saw more than that, but those clips were not introduced. None of that evidence was made available to you for you to see with your own eyes how he was walking, how he was talking, how he was acting.

The prosecutor responded:

> [Defense counsel] suggested that I hid information from you. I didn't provide you

evidence. Ladies and gentlemen, that's
preposterous. You saw [defense counsel] go up
here and hand the DVD and show DVDs and
show videos to [the officer]. Did you not? If it
was so important, put those in.

### B. Standard of Review

¶ 64  We engage "in a two-step analysis to review claims of

prosecutorial misconduct." *People v. Robinson*, 2019 CO 102, ¶ 18.

First, we determine whether the prosecutor's conduct was improper

"based on the totality of the circumstances." *Id.* (quoting *Wend v.*

*People*, 235 P.3d 1089, 1096 (Colo. 2010). If the conduct was

improper, we consider whether reversal is warranted under the

applicable standard of review. *Id.*

### C. Analysis

¶ 65  The prosecutor's conduct was not improper based on the

totality of the circumstances, but even if it was, any error in

permitting it was not plain. *See Hagos v. People*, 2012 CO 63, ¶ 14.

#### 1. Misstating Facts and Improper Argument Relating to Cocaine

¶ 66  Prosecutors must avoid "arguments calculated to appeal to

prejudices or to mislead the jury." *People v. Mason*, 643 P.2d 745,

752 (Colo. 1982).

¶ 67    The prosecutor seemingly overstated the significance of the presence of cocaine metabolite in Gonzales's blood sample.  Still, even assuming the argument amounted to misconduct, and even assuming the misconduct was obvious such that the district court should have intervened sua sponte, any error was not substantial.  *See Hagos*, ¶ 14.  Because the prosecutor's expert testified that the cocaine metabolite was inactive and would not have impaired Gonzales's ability to drive at the time he operated the motor vehicle, we cannot say that the prosecutor's comments "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction."  *Id.* (quoting *People v. Miller*, 113 P.3d 743, 748–50 (Colo. 2005)).

### 2.    Referring to Facts Not in Evidence

¶ 68    The prosecutor's reference to the DVDs was in response to defense counsel's implication that exculpatory evidence was not shown to the jury and that the prosecutor had cherry-picked inculpatory clips from the body worn camera footage.  In effect, defense counsel suggested in her closing argument that there were facts not in evidence that the prosecutor was avoiding.  The prosecutor responded during rebuttal, pointing out that defense

26

counsel did not admit the complete DVDs into evidence either. While neither party should have referred to facts not in evidence, the prosecutor's argument was not improper because defense counsel first implied that the prosecutor sought to avoid the unadmitted portions of the DVDs. *See People v. Lovato*, 2014 COA 113, ¶ 63 ("In considering whether prosecutorial remarks are improper, the reviewing court must weigh the effect of those remarks on the trial, and also take into account defense counsel's 'opening salvo.'" (quoting *People v. Perea*, 126 P.3d 241, 247 (Colo. App. 2005))).

### 3. Denigrating the Defense

¶ 69    A prosecutor "may not . . . denigrate defense counsel." *People v. Carter*, 2015 COA 24M-2, ¶ 70.  But prosecutors are afforded "considerable latitude in replying to opposing counsel's argument." *People v. Iversen*, 2013 COA 40, ¶ 37.

¶ 70    Gonzales claims that the prosecutor denigrated defense counsel during rebuttal with his argument that she was hiding information by not introducing the DVDs.  But as discussed, defense counsel in her closing argument first implied that the prosecutor did not want the full DVDs admitted.  The prosecutor's

rebuttal, in essence stating that defense counsel also could have sought to introduce the entirety of the DVDs, did not denigrate the defense. *See id.* at ¶¶ 37-38 (prosecutor's remark was in response to defense counsel's arguments and not made for the purpose of attacking defense counsel); *cf. People v. Coria*, 937 P.2d 386, 391 (Colo. 1997) (prosecutor's references to "smoke and mirrors" and "diversionary tactics" would be improper if used as a means to attack or mock defense counsel).

¶ 71    The prosecutor's conduct was not improper, so the district court did not err in allowing the statements.

## VIII.  Cumulative Error

¶ 72    Finally, Gonzales claims that the cumulative effect of the district court's alleged errors warrants reversal.  Cumulative error occurs "when numerous errors in the aggregate show the absence of a fair trial."  *Howard-Walker v. People*, 2019 CO 69, ¶ 26.

¶ 73    While we assumed errors regarding the unredacted exhibits, expert testimony claims, and overstating the significance of the presence of cocaine metabolite in the blood sample, even in combination, these errors do not warrant reversal.  As already discussed, the evidence that Gonzales was driving while his ability

was impaired by alcohol or drugs was strong and the errors were minimally prejudicial. When viewed "in the aggregate and against the backdrop of other evidence," the cumulative effect of the district court's errors was slight and did not deprive Gonzales of a fair trial. *People v. Vialpando*, 2022 CO 28, ¶ 64.

## IX.  Conclusion

¶ 74    We affirm the judgment of conviction.

JUDGE HARRIS and JUDGE SCHOCK concur.